**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

PARALLEL IRON, LLC,

                Plaintiff,

     v.

NETAPP, INC.,

                Defendant.

C.A. No. 12-769-RGA

**REDACTED VERSION**

**PLAINTIFF PARALLEL IRON, LLC'S ANSWERING BRIEF IN OPPOSITION TO
DEFENDANT NETAPP, INC.'S MOTION TO DECLARE CASE EXCEPTIONAL AND
AWARD ATTORNEYS' FEES UNDER 35 U.S.C. § 285 AND THIS COURT'S
<u>INHERENT POWER</u>**

May 19, 2014

**Redacted Version Filed: May 20, 2014**

BAYARD, P.A.

Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (vt5398)
Sara E. Bussiere (sb5725)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com
sbussiere@bayardlaw.com

*Attorneys for Plaintiff Parallel Iron, LLC*

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND ............................................................................... 2

      A.  Parallel Iron's Patent Portfolio Is The Result of Years Of Work. ......................... 2

      B.  Parallel Iron's Pre-Suit Investigation Was Costly And Extensive ......................... 3

      C.  The NetApp Litigation .................................................................................... 4

III.  ARGUMENT ...................................................................................................... 5

      A.  NetApp Is Not The Prevailing Party ................................................................. 7

      B.  Parallel Iron Had Reasonable Bases To File Its Lawsuit ..................................... 9

      C.  Parallel Iron Did Not Engage In Any Litigation Misconduct ............................. 11

      D.  The Court Already Determined That Parallel Iron Did Not Act In Bad Faith ..... 16

      E.  NetApp Makes No Argument To Justify Fees, Even If The Case Were "Exceptional" ................................................................................................. 17

      F.  The Court Should Not Award Fees Pursuant to Its Inherent Power .................... 18

IV.  CONCLUSION .................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*2-Way Computing, Inc. v. Sprint Nextel Corp.*,
    C.A. No. 2:11-CV-12 JCM PAL, 2013 WL 2218010 (D. Nev. May 17, 2013)......................15

*Akers v. Nicholson*,
    409 F.3d 1356 (Fed. Cir. 2005)..........................................................................................7

*Avago Technologies U.S., Inc. v. STMicroelectronics, Inc.*,
    C.A. No. 6:10-CV-92, 2011 WL 3439929 (E.D. Tex. Aug. 5, 2011) ....................................14

*Bayer CropScience AG v. Dow AgroSciences LLC*,
    CIV. 10-1045, 2012 WL 4498527 (D. Del. Sept. 27, 2012)....................................................15

*Bianco v. Globus Med., Inc.*,
    C.A. No. 2:12-CV-00147-WCB, 2014 WL 1904228 (E.D. Tex. May 12, 2014).....................6

*Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*,
    532 U.S. 598 (2001).............................................................................................................8

*Cadence Pharm., Inc. v. Paddock Labs. Inc.*,
    886 F. Supp. 2d 445 (D. Del. 2012).........................................................................................15

*Chambers v. NASCO, Inc.*,
    50 U.S. 32, 45-46 (1991) ....................................................................................................18

*Commissariat a l'Energie Atomique v. Samsung Electronics Co.*,
    524 F. Supp. 2d 498 (D. Del. 2007).........................................................................................15

*Commonwealth Research Grp. LLC v. Lattice Semiconductor Corp.*,
    C.A. No. 11-655-RGA, 2012 WL 2501107 (D. Del. June 28, 2012) .................................9, 16

*Cooper Notification, Inc. v. Twitter, Inc.*,
    867 F. Supp. 2d 485 (D. Del. 2012).........................................................................................14

*Cybor Corp. v. FAS Techs., Inc.*,
    138 F.3d 1448 (Fed. Cir. 1998).................................................................................................6

*Eli Lilly & Co. v. Bd. of Regents of Univ. of Washington*,
    334 F.3d 1264 (Fed. Cir. 2003)...............................................................................................15

*Eon–Net LP v. Flagstar Bancorp*,
    653 F.3d 1314 (Fed. Cir. 2011)............................................................................................5, 13

*Exigent Tech., Inc. v. Atrana Solutions, Inc.*,
   442 F.3d 1301 (Fed. Cir. 2006)..................................................................................7, 8

*Forest Labs., Inc. v. Abbott Labs.*,
   339 F.3d 1324 (Fed. Cir. 2003)......................................................................................17

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
   134 S. Ct. 1744 (2014) ...................................................................................................5

*Highway Equip. Co., Inc. v. FECO, Ltd.*,
   469 F.3d 1027 (Fed. Cir. 2006)........................................................................................8

*Indep. Fed'n of Flight Attendants v. Zipes*,
   491 U.S. 754, 759 n.2 (1989)...........................................................................................8

*Inland Steel Co. v. LTV Steel Co.*,
   364 F.3d 1318 (Fed. Cir. 2004)........................................................................................7

*Integrated Tech. Corp. v. Rudolph Technologies, Inc.*,
   734 F.3d 1352 (Fed. Cir. 2013)......................................................................................18

*Jack Guttman, Inc. v. Kopykake Enters., Inc.*,
   302 F.3d 1352, 1361 (Fed. Cir. 2002)............................................................................14

*Kentucky v. Graham*,
   473 U.S. 159 (1985).........................................................................................................8

*Kilopass Tech. Inc. v. Sidense Corp.*,
   738 F.3d 1302 (Fed. Cir. 2013)......................................................................................17

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
   372 F. Supp. 2d 833 (E.D. Va. 2005) ..............................................................................6

*Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*,
   445 F.3d 1348 (Fed. Cir. 2006)......................................................................................14

*Matsushita Battery Indus. Co. v. Energy Conversion Devices, Inc.*,
   No. 96-101-SLR, 1997 WL 811563 (D. Del. Dec. 23, 1997).........................................17

*Nat'l Presto Indus., Inc. v. W. Bend Co.*,
   76 F.3d 1185 (Fed. Cir. 1996)........................................................................................17

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   134 S. Ct. 1749 (2014).................................................................................................1, 6

*Parallel Iron LLC v. Adknowledge Inc.*,
   C.A. No. 11-799-RGA, 2012 WL 5392251 (D. Del. Nov. 2, 2012)..................................2

*Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*,
　　182 F.3d 1356 (Fed. Cir. 1999)..................................................................................8

*Q–Pharma, Inc. v. Andrew Jergens Co.*,
　　360 F.3d 1295 (Fed. Cir. 2004)..................................................................................9

*Rambus, Inc. v. Infineon Technologies, AG*,
　　318 F.3d 1081 (Fed. Cir. 2003)................................................................................13

*Realtime Data, LLC v. Morgan Stanley*,
　　C.A. No. 11 CIV. 6696 KBF, 2012 WL 3158196 (S.D.N.Y. Aug. 2, 2012)...........15

*Senju Pharm. Co., Ltd. v. Lupin Ltd. & Lupin Pharm., Inc.*,
　　2013 WL 4101820 (D. Del. Aug. 9, 2013) ..............................................................5

*Spectros Corp. v. Thermo Fisher Scientific*,
　　C-09-01996 SBA, 2012 WL 5523510 (N.D. Cal. Nov. 13, 2012) ..........................12

*Spectros Corp. v. Thermo Fisher Scientific, Inc.*,
　　C-09-01996 SBA NJV, 2012 WL 5524914, at *4 (N.D. Cal. Sept. 17, 2012)........12

*USA Video Tech. Corp. v. Movielink, LLC*,
　　C.A. No. 03-368-KAJ, 2005 WL 3418407 (D. Del. Dec. 13, 2005) ........................9

*Visto Corp. v. Sproqit Techs., Inc.*,
　　No. C-04-0651, 2007 WL 160942 (N.D. Cal. Jan.17, 2007)....................................7

*Walhonde Tools, Inc. v. Wilson Works, Inc.*,
　　C.A. No. 1:09CV48, 2012 WL 1965628 (N.D.W. Va. May 31, 2012) ...................14

## STATUTES

35 U.S.C. § 285............................................................................................................. passim

## OTHER AUTHORITIES

FED. R. CIV. P. 12(b) ......................................................................................................11

Local Rule 54.1 ...........................................................................................................7, 8

## I.        INTRODUCTION

Plaintiff Parallel Iron, LLC ("Parallel Iron") respectfully files this Answering Brief in opposition to Defendant NetApp, Inc.'s ("NetApp") Motion to Declare Case Exceptional and Award Attorneys' Fees Under 35 U.S.C. § 285 and this Court's Inherent Power (the "Motion"). This case is not exceptional under 35 U.S.C. § 285 ("Section 285") because NetApp is not the prevailing party and cannot prove that this case "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). Parallel Iron's infringement case against NetApp was thoroughly investigated, reasonably litigated, and eventually resolved after NetApp received the benefit of licenses recently taken to the patented technology by its suppliers and service providers. Beyond its failure to show that this is an exceptional case, NetApp further fails even to attempt to make the requisite showing that it is entitled to fee shifting or to demonstrate that the fees it seeks are reasonable. The only thing exceptional about this case is that NetApp seeks attorneys' fees where the litigation was resolved before claim construction and without any judicial determination of non-infringement or invalidity, and where NetApp is not a prevailing party.

NetApp largely ignores Parallel Iron's conduct in this litigation, and instead attempts to prove that this case is exceptional by disparaging Parallel Iron's former licensing advisor and criticizing conduct in other cases involving different defendants and/or plaintiff's counsel for which the Court already declined to award fees. (*See* Op. Br. at 3-4 (criticizing non-party IP Navigation Group); 1, 4-6 (complaining about Parallel Iron's earlier enforcement of a different

patent);[1] and 8 (emphasizing the Court's decision to strike Parallel Iron's amended section 4(a) disclosures in a different case).)  While NetApp makes a number of unsubstantiated, conclusory allegations about Parallel Iron, NetApp's complaints reduce to this: Parallel Iron's complaint accused pNFS *and other unidentified data storage systems* of infringement; Parallel Iron identified the "other accused data storage systems" in its Amended and Second Amended Paragraph 4(a) Disclosures; NetApp ignored these disclosures and allegedly spent a lot of money focusing on only one aspect of Parallel Iron's case; NetApp sought to strike Parallel Iron's Amended and Second Amended Paragraph 4(a) Disclosures and lost, the Court stayed the case against NetApp under the customer-suit exception; during the stay Parallel Iron entered into two separate license agreements;[2] NetApp is a sublicensee under these agreements; and as a result, Parallel Iron dismissed this action.  (Op. Br. at 7-11.)  Nothing about Parallel Iron's conduct in this litigation is improperly exceptional, NetApp has not carried its burden, and the Court should deny NetApp's Motion.

## II.     FACTUAL BACKGROUND

### A.     Parallel Iron's Patent Portfolio Is The Result of Years Of Work.

The individuals behind Parallel Iron spent years developing high-performance storage technology, patenting the resulting technology, assembling a team of executives and advisors to form a company, and attempting to commercialize the technology.  (*See* Declaration of Steven L.

---

[1]   The Court declined to award fees against Parallel Iron based on its enforcement of this patent in a different case with different lead counsel.  *Parallel Iron LLC v. Adknowledge Inc.*, C.A. No. 11-799-RGA, 2012 WL 5392251, at *2 (D. Del. Nov. 2, 2012).

[2]   ████████████████████████████████████████████████████████████████████

Dodd ("Dodd Decl.") ¶ 4; Declaration of Joseph S. Hoover, Jr. ("Hoover Decl.") ¶ 4.) Specifically, one of the named inventors of the patent in suit, Steven Dodd, spearheaded efforts in the early 2000s to assemble the right team of experts and advisors who could develop business plans and models and begin raising the money required to bring the patented technologies to market. (Dodd. Decl. ¶ 4.) The team envisioned a company building and marketing high performance storage systems, but due to the collapse of the venture capital market around that same time, the fundraising campaign was not successful. (*Id.*) Nevertheless, the effort continued to improve and expand the patent portfolio. (*Id.* ¶¶ 4-5.) After several years of continuing work on developing the technology and the patent portfolio, it became apparent to Mr. Dodd that while Parallel Iron could not directly commercialize its patents due to the timing of the venture capital market collapse, others were having tremendous success with high performance data solutions—using the inventions embodied in the Parallel Iron patents. (*Id.* ¶ 5; Hoover Decl. ¶¶ 4-5.)

**B.     Parallel Iron's Pre-Suit Investigation Was Costly And Extensive.**

Before Parallel Iron filed suit in this Court on U.S. Patent Nos. 7,197,662, 7,543,177 and 7,958,388 (collectively, the "Patents in Suit"), it performed extensive investigation and analysis. (*See* Dodd Decl. ¶¶ 5-7; Hoover Decl. ¶¶ 5-6.) Mr. Dodd, one of the named inventors, performed his own extensive analysis concerning NetApp's infringement. (Dodd Decl. ¶¶ 3, 5.) In addition to Mr. Dodd, Parallel Iron retained another outside consultant's services to assist with the investigation and enlisted a team of experts, consultants and legal advisors to perform additional work and pre-suit analysis. (*Id.*; Hoover Decl. ¶ 5.) For the outside consultant's services to assist with this investigation, Parallel Iron spent approximately ███████. (Dodd Decl. ¶ 7.) This process occurred over the course of two to three months. (*Id.*) Parallel Iron continued to analyze and research NetApp's infringement of the Patents in Suit during the course

of the litigation.  (*Id.* ¶ 9.)  Thus, pursuant to its practice and recognition of its duties, Parallel

Iron filed this lawsuit only after ensuring it had done everything necessary to accuse NetApp of

infringement, and believing in good faith it had all rights to do so.  (*See generally* Dodd Decl.

¶¶ 5-7; Hoover Decl. ¶ 5.)

### C.     The NetApp Litigation

On June 18, 2012, Parallel Iron filed the complaint in this action alleging infringement of

the Patents in Suit.  (D.I. 1.)  NetApp did not challenge the sufficiency of the pleadings and

instead filed an answer to the Complaint on August 13, 2012.  (D.I. 7.)  On February 15, 2013,

Parallel Iron served its Disclosures Pursuant to Paragraph 4(a) of the Delaware Default Standards

for Discovery of Electronically Stored Information (the "Default Standards").[3]  (D.I. 22.)  The

Default Standards explicitly allow parties to supplement their disclosures.  (*See* Default

Standards at n.3 ("As these disclosures are 'initial,' each party shall be permitted to

supplement.") (emphasis added).)

Consistent with the Default Standards, Parallel Iron supplemented its Paragraph 4(a)

disclosures on April 23, 2013 (the "First Amended Paragraph 4(a) Disclosures") and May 7,

2013 (the "Second Amended Paragraph 4(a) Disclosures").  (D.I. 26, 27.)  Each of these

disclosures identified specific accused products or categories of products (*i.e.* the NetApp E-

Series Platform products, the FAS6200 Enterprise Storage System, and Hadoop related products)

that remained the focus of Parallel Iron's lawsuit.  (Brauerman, Decl., Exs. B-C.)  Based on

these disclosures, NetApp knew since at least April 23, 2013 that this case was not limited to

pNFS systems.  On May 25, 2013, Parallel Iron served detailed preliminary infringement

---

[3]   A copy of Parallel Iron's Section 4(a) Disclosures are attached as Exhibit A to the Declaration
of Stephen B. Brauerman, Esquire in Support of Parallel Iron LLC's Answering Brief in
Opposition to NetApp, Inc.'s Motion to Declare Case Exceptional and Award Attorneys' Fees
Under 35 U.S.C. § 285 and this Court's Inherent Power (*hereinafter* "Brauerman Decl.").

contentions pursuant to Paragraph 4(c) of the Default Standards, charting the three categories of accused products identified in its Second Amended Paragraph 4(a) Disclosures.

The parties proceeded with minimal discovery and began the claim construction process. Meanwhile, NetApp utilized the Court's discovery dispute procedures in an attempt to strike Parallel Iron's amended Section 4(a) disclosures because, NetApp argued, the amended disclosures improperly attempted to expand the case beyond the pNFS standard.  (D.I. 43, 44.) The Court held a discovery dispute conference on September 27, 2013, during which the Court declined to strike Parallel Iron's amended Section 4(a) disclosures.   (Sayers Decl. Ex. D.) Because certain of the NetApp's accused products were manufactured by Cloudera, Inc. ("Cloudera"), the Court *sua sponte* allowed the parties to stipulate to a stay of this litigation pending the resolution of the Cloudera action.  (*Id.*)  The parties stipulated to a stay of this action on October 9, 2013.  (D.I. 49.)  After Parallel Iron entered into license agreements with Cloudera and non-party Unified Patents Inc., which gave NetApp licenses to the Patents in Suit, the parties stipulated to the dismissal of this action.  (D.I. 55.)  NetApp filed the instant Motion on March 31, 2014.  (D.I. 58.)

## III.    ARGUMENT

Pursuant to 35 U.S.C. § 285 ("Section 285"), "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  *Senju Pharm. Co., Ltd. v. Lupin Ltd. & Lupin Pharm., Inc.*, 2013 WL 4101820, at *14 (D. Del. Aug. 9, 2013).  To determine whether an award of attorney fees is justified under Section 285, the Court applies a two-step analysis.  *See Eon–Net LP v. Flagstar Bancorp,* 653 F.3d 1314, 1323–24 (Fed. Cir. 2011).  First, the Court must "determine whether the prevailing party has proved . . . that the case is exceptional" by a preponderance of the evidence.  *Id.*; *see also Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744 (2014) (changing the burden of proof from clear and convincing evidence to

preponderance of the evidence).   There are no specific factors the Court must consider – "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.   District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."   *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).[4]   If the Court finds the case exceptional, the Court then considers whether an award of attorney fees is appropriate and, if fees are appropriate, the amount of the award." *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1460 (Fed. Cir. 1998).

As the Supreme Court recently confirmed, an exceptional case finding should remain rare.  *Octane Fitness*, 134 S. Ct. at 1756-57   ("Under the standard announced today, a district court may award fees *in the rare case* in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees.") (emphasis added); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp*., 372 F. Supp. 2d 833, 851 (E.D. Va. 2005) ("Congress…made clear that this should occur only in rare

---

[4]    The Court should not consider NetApp's motion under the *Octane Fitness* standard, since NetApp did not ask the Court to apply the more liberal Octane standard, even though *Octane Fitness* was fully briefed and argued to the Supreme Court *before* NetApp filed this motion.  *See Bianco v. Globus Med., Inc.*, C.A. No. 2:12-CV-00147-WCB, 2014 WL 1904228, at *1 (E.D. Tex. May 12, 2014) (Bryson, C.J. *sitting by designation*) ("Globus's failure to argue in favor of the more liberal standard, even though the continued vitality of that case was subject to question by virtue of the pendency of *Octane Fitness* constitutes a waiver of its right to press that standard.  While a party may not be chargeable with anticipating unexpected changes in the law, the change made in *Octane Fitness* cannot be characterized as unexpected, given that the Supreme Court had granted certiorari in that case to consider whether the Federal Circuit's section 285 test should be rejected.").  As a result, the Court should analyze NetApp's fee motion under the Federal Circuit's old standard, which for the reasons set forth herein, NetApp cannot prove that Parallel Iron's conduct was objectively baseless *and* brought in subjective bad faith.  Even if the Court applies the *Octane Fitness* standard, this case does not stand out from all others on either the strength of Parallel Iron's litigation position or the manner in which Parallel Iron litigated the case after reviewing the totality of the circumstances.  *Octane Fitness*, 134 S. Ct. at 1756; *Bianco*, 2014 WL 1904228, at *2, *5 (E.D. Tex. May 12, 2014) (finding that an adverse ruling does not demonstrate that a case was frivolous or meritless).

or extraordinary cases."); *Visto Corp. v. Sproqit Techs., Inc.*, No. C-04-0651, 2007 WL 160942, at *2 (N.D. Cal. Jan.17, 2007) (holding that "use of the term 'exceptional' in § 285 is not to be taken lightly.").  Applying these standards and exercising its discretion, the Court should deny the Motion because NetApp is not the prevailing party, Parallel Iron had a reasonable basis to bring this suit, Parallel Iron did not engage in litigation misconduct, the case was not objectively baseless (and indeed resulted in two separate licenses for substantial consideration), and the Court already found that Parallel Iron acted in good faith in amending its Paragraph 4(a) Disclosures.

### A.    NetApp Is Not The Prevailing Party

Without analysis, NetApp concludes in just two sentences that it is the prevailing party. (Op. Br. at 12.)  NetApp is wrong.  A necessary prerequisite to any award of fees and costs under Section 285 is a finding that NetApp is the prevailing party.  35 U.S.C. § 285.  NetApp is not the prevailing party because this case was resolved by virtue of license agreements Parallel Iron entered into with two third-parties that benefitted NetApp.  *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1312 (Fed. Cir. 2006) ("[Defendant] cannot be a prevailing party if the case was resolved by settlement (not incorporated by judicial decree) prior to any relief on the merits."); *see also Akers v. Nicholson*, 409 F.3d 1356, 1359 (Fed. Cir. 2005); *Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1320–21 (Fed. Cir. 2004).  The Court did not enter judgment on the merits, did not incorporate the third-party license agreements into any judicial decree, and did not grant the stipulation of dismissal based on the review of any settlement agreement between the parties.  NetApp is not, therefore, the prevailing party, and the Court should deny the Motion.

The minimal authority NetApp offers to support its conclusion that it is the prevailing party is also unavailing.  Focusing on just one sentence of Local Rule 54.1(c), NetApp ignores two important facts fatal to its argument.  First, Local Rule 54.1(c) is discretionary and does not

apply where it conflicts with the rules or holdings of the applicable appellate courts.  *See* L.R. 54.1(c) ("The determination of the prevailing party shall be within the discretion of the Court in all cases except where such determination is inconsistent with statute or the Fed. R. Civ. P. or the rules of the appellate courts.").  Second, whether a party prevailed for Section 285 purposes is a question of Federal Circuit law, which trumps Local Rule 54.1.  *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.,* 182 F.3d 1356, 1359 (Fed. Cir. 1999) (observing that Federal Circuit law "governs the substantive interpretation of 35 U.S.C. § 285, which is unique to patent law").  As set forth above, under Federal Circuit law, a party cannot prevail where a case is resolved by stipulated dismissal in the absence of a judicial decree.  *See Exigent Tech.*, 442 F.3d at 1312. Local Rule 54.1(c) does not, therefore, dispose of the prevailing party question.

Nor does the one case NetApp cites, *Highway Equip. Co., Inc. v. FECO, Ltd.*, support NetApp's prevailing party argument.  469 F.3d 1027 (Fed. Cir. 2006).  Citing a plethora of Supreme Court authority, *Highway Equipment* recognizes that Section 285 "prohibit[s] an award of fees to the plaintiff unless the court awards relief on the merits, either through a judgment on the merits or through a settlement agreement enforced through a consent decree."  *Id.* at 1033-34 (citing *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.,* 532 U.S. 598 (2001); *Kentucky v. Graham,* 473 U.S. 159 (1985); *Indep. Fed'n of Flight Attendants v. Zipes,* 491 U.S. 754, 759 n.2 (1989)).  NetApp and Parallel Iron did not enter into a settlement agreement, the Court did not make any findings on the merits, and the case was not resolved through a consent decree.  Unlike the dismissal in *Highway Equipment*, which was predicated on a covenant not to sue that formed the "basis for the Court's order dismissing the claims with prejudice," no such record supported the dismissal here.  *Id.* at 1034-35.  The stipulated dismissal

between Parallel Iron and NetApp cannot make NetApp the prevailing party.   As a result, NetApp cannot avail itself of Section 285.

### B.      Parallel Iron Had Reasonable Bases To File Its Lawsuit

NetApp argues, without any analysis or evidentiary support, that "the asserted patents simply cannot be read to encompass pNFS" and therefore concludes that Parallel Iron did not have any reasonable basis to file this suit.  (Op. Br. at 13-14.)   Again, NetApp is wrong.  Parallel Iron conducted a thorough pre-filing investigation and continues to have good reason to believe that pNFS infringes its patents.  (Dodd. Decl. ¶¶ 5-7.)  Parallel Iron analyzed and prepared pre-suit infringement charts regarding pNFS and its infringement of the Patents in Suit.  (Dodd. Decl. ¶ 6.)  This analysis demonstrates that Parallel Iron had a reasonable basis to file its lawsuit. *Commonwealth Research Grp. LLC v. Lattice Semiconductor Corp.*, C.A. No. 11-655-RGA, 2012 WL 2501107, at *2 (D. Del. June 28, 2012) ("Cypress went through the steps that a reasonable company contemplating bringing a patent suit would go through.  It had qualified people examine the patent, the defendant's product, and produce an infringement chart."); s*ee Q– Pharma, Inc. v. Andrew Jergens Co.,* 360 F.3d 1295, 1302 (Fed. Cir. 2004) ("[O]ur case law makes clear that the key factor in determining whether a patentee performed a reasonable pre-filing inquiry is the presence of an infringement analysis.").  As a result, Parallel Iron's pNFS related pre-filing investigation does not make this exceptional.

That Parallel Iron declined NetApp's invitation to waive its attorney-client and work product privileges and immunities similarly does not prove that Parallel Iron failed to conduct an adequate pre-filing investigation. (Op. Br. at 14.)  This Court previously has found that a party need not waive its pre-filing privileges in order to respond to a Section 285 motion, especially in the absence of any showing of an inadequate investigation.  *USA Video Tech. Corp. v. Movielink, LLC*, C.A. No. 03-368-KAJ, 2005 WL 3418407, at *4 (D. Del. Dec. 13, 2005) ("Second, there is

no evidence that the assertion of privilege by USVO witnesses was made in bad faith to cover for a lack of investigation or lack of an infringement theory.  Movielink's argument at this late date that these witnesses improperly asserted attorney-client privilege fails to address work product protection and, more importantly, simply fails to show that USVO lacked a basis for asserting infringement.").[5]  NetApp has not introduced any evidence upon which the Court could conclude that the Parallel Iron's pre-filing investigation was inadequate.[6]

Contrary to NetApp's repeated assertions and as evidenced by the Complaint and Parallel Iron's Amended and Second Amended Paragraph 4(a) disclosures, this case was never limited to pNFS.  (D.I. 1; Brauerman Decl., Exs. B-C.)  Parallel Iron had separate and independent bases to maintain this lawsuit based on NetApp's infringement of the Patents in Suit using, for example, NetApp's FAS6200 Enterprise Storage System and Hadoop related products.  (Dodd Decl. ¶¶ 5-8.)  Moreover, Parallel Iron did not withdraw its pNFS based claims because of their strength, but rather because Parallel Iron learned during the course of this litigation that despite public materials documenting NetApp's use of pNFS, the damages associated with NetApp's pNFS related infringement were minimal.  (Dodd Decl. ¶ 8; *see, e.g.*, Brauerman Decl., Ex. D at 7-8 ("NetApp is contributing heavily to the pNFS client and the file layout driver".)  Parallel Iron's approximately 2,600 pages of infringement contentions concerning these products, which NetApp acknowledges were based almost exclusively on public information, more than

---

[5]  If the Court wishes to review the claim charts Parallel Iron prepared in connection with its pre-filing investigation, Parallel Iron will make them available for *in camera* review at the Court's request.

[6]  NetApp's failure of proof is particularly troublesome here when there has not been any judicial determination of Parallel Iron's infringement or validity case.  Had the Court rejected Parallel Iron's substantive positions, some basis might exist to question Parallel Iron's pre-filing investigation.

substantiate Parallel Iron's investigation.[7]   Tellingly, NetApp does not even challenge Parallel Iron's assertion of these accused products.  (*See generally* Op. Br.)  Parallel Iron had reasonable bases to bring this action and the Court should not find this case exceptional on the basis of Parallel Iron's pre-filing investigation.

### C.       Parallel Iron Did Not Engage In Any Litigation Misconduct

In its Motion, NetApp complains about several instances of alleged litigation misconduct by Parallel Iron: (i) the sufficiency of Parallel Iron's complaint, (ii) the amendment of Parallel Iron's Paragraph 4(a) Disclosures, (iii) Parallel Iron's inadequate discovery responses and allegedly delayed service of discovery requests, and (iv) Parallel Iron's proposal of plain and ordinary constructions and refinement of its claim construction positions during the claim construction process.  (Op. Br. at 14-15.)  None of these complaints qualify as litigation misconduct or evidence any bad faith by Parallel Iron sufficient to justify an exceptional case finding and an award of attorneys' fees.

Prior to filing this Motion, NetApp never complained about the sufficiency of the Complaint.  In fact, NetApp filed an answer to the Complaint, which waived any argument it might have about the sufficiency of the Complaint.  (D.I. 7); FED. R. CIV. P. 12(b) ("A motion asserting any of these defenses must be made before pleading . . .").  That a different defendant filed a successful motion to dismiss a different complaint in a different action does not demonstrate that Parallel Iron committed any litigation misconduct in this action and NetApp does not cite any support for such a position.[8]   Even if the Court dismissed Parallel Iron's

---

[7]   Due to their size, Parallel Iron does not attach copies of its Paragraph 4(c) Disclosures to this brief.  If the Court wishes to review Parallel Iron's preliminary infringement contentions, Parallel Iron will promptly provide copies of the disclosures to the Court.

[8]   Parallel Iron filed a new complaint against Accenture to address the pleading issues the Court identified in its dismissal order.  *See* C.A. No. 12-1468-RGA.

Complaint without prejudice, as it did in the *Accenture* case, such a dismissal would not evidence litigation misconduct as the Court routinely grants motions to dismiss without prejudice to allow plaintiffs to address pleading deficiencies. *Spectros Corp. v. Thermo Fisher Scientific, Inc.*, C-09-01996 SBA NJV, 2012 WL 5524914, at *4 (N.D. Cal. Sept. 17, 2012), *adopted in part and rejected in part on other grounds by Spectros Corp. v. Thermo Fisher Scientific*, C-09-01996 SBA, 2012 WL 5523510 (N.D. Cal. Nov. 13, 2012) (refusing to find litigation misconduct based on the filing of an amended complaint after rejection of certain claims in reexamination). Parallel Iron's complaint does not evidence any litigation misconduct.

Parallel Iron's Amended and Second Amended Paragraph 4(a) Disclosures similarly do not evidence any litigation misconduct.   At the September 27, 2013 discovery dispute conference, the Court denied NetApp's request to strike Parallel Iron's amended disclosures. (*See* Sayres Decl., Ex. D at 25:6-10; 26:11-17.)   Indeed, the Default Standards explicitly authorize Parallel Iron to amend its disclosures.   (Default Standards at n.3.)   As a result, the amendment of the initial disclosures cannot constitute litigation misconduct.   NetApp also argues that Parallel Iron's repeated identification of pNFS as "*the* accused system" evidences litigation misconduct.   (Op. Br. at 13.)   NetApp misreads the Amended Paragraph 4(a) Disclosures.   While the Amended and Second Amended Paragraph 4(a) Disclosures identified pNFS as *an* accused instrumentality, they also identified additional accused products that NetApp ignored. Again, nothing is improper about Parallel Iron's identification of pNFS as an accused instrumentality and nothing is improper about Parallel Iron's decision to withdraw its claims relating to pNFS after it determined that any recoverable damages for NetApp's pNFS-related infringement did not justify continued litigation.   (Dodd Decl. ¶ 8.)   NetApp has not carried its burden to show that Parallel Iron's amended disclosures evidence litigation misconduct.

NetApp similarly cannot show litigation misconduct by complaining about Parallel Iron's responses to its discovery requests. Notably absent from NetApp's motion is any indication that it complained about the sufficiency of Parallel Iron's discovery responses during the case. At no time did NetApp avail itself of the Court's discovery dispute procedures or attempt to meet and confer with Parallel Iron about such responses. NetApp's Motion does not explain or identify how Parallel Iron "did not adequately respond to discovery requests," but there is not even a suggestion that Parallel Iron destroyed or falsified documents, gave untruthful responses, or committed the kinds of discovery misconduct that justify sanctions. (Op. Br. at 15); s*ee, e.g.*, *Eon–Net, LP v. Flagstar Bancorp.*, 653 F.3d 1314, 1324–25 (Fed. Cir. 2011); *Rambus, Inc. v. Infineon Technologies, AG,* 318 F.3d 1081, 1106 (Fed. Cir. 2003).

Nor does Parallel Iron's service of document requests on a different defendant (Amazon) in a different case demonstrate litigation misconduct here, regardless of whether the document requests Parallel Iron served on Amazon were untimely. (Op. Br. at 15; Sayres Decl. ¶ 6 (complaining about document requests served in another case).) The entirety of the discovery Parallel Iron served on NetApp, beyond the exchange of core technical documents under the Default Standards, consisted of *four* requests for admission to which NetApp never responded. (D.I. 49.) Serving four requests for admission cannot, under any reasonable formulation, equate to the "exploitation of the discovery process 'to impose disproportionate discovery costs on'" NetApp. (Op. Br. at 15.) To the contrary, the record demonstrates that Parallel Iron did not burden NetApp with costly and time-consuming discovery in order to extract a nuisance value settlement and did not engage in any litigation misconduct through its discovery responses.

NetApp's complaints regarding claim construction are similarly misplaced for several reasons. First, the Court stayed the NetApp case after defendants in the related matters served

13

their answering claim construction brief.  (D.I. 50.)  As a result, NetApp's complaints about Parallel Iron's post-stay conduct – by withdrawing its reliance on means-plus-function terms before the filing of its reply brief or changing its proposed constructions on two terms in connection with the submission of the joint claim chart – have no bearing on NetApp's entitlement to attorneys' fees and costs as Parallel Iron's conduct in other cases cannot make this case exceptional.  These actions also occurred *after* the time period for which NetApp seeks its fees.  This conduct is irrelevant and cannot justify an exceptional case finding.

Second, there was nothing improper about the Parallel Iron's approach to claim construction.  Parties routinely develop and refine their claim construction positions during briefing and even during the *Markman* hearing itself.  *Cf. Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*, 445 F.3d 1348, 1353 (Fed. Cir. 2006) (observing that there is nothing improper with altering a claim construction position where party argued one claim construction position at the *Markman* hearing and, after hiring separate counsel, advanced a slightly different position on a motion for reargument); *Cooper Notification, Inc. v. Twitter, Inc.*, 867 F. Supp. 2d 485, 498 (D. Del. 2012) (noting that change in claim construction position was appropriate where justified by changed procedural circumstances); *Walhonde Tools, Inc. v. Wilson Works, Inc.*, C.A. No. 1:09CV48, 2012 WL 1965628, at *4 (N.D.W. Va. May 31, 2012) ("Although the *Markman* hearing in this case has concluded, the Court may engage in "rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.") *citing Jack Guttman, Inc. v. Kopykake Enters., Inc.,* 302 F.3d 1352, 1361 (Fed. Cir. 2002); *Avago Technologies U.S., Inc. v. STMicroelectronics, Inc.*, C.A. No. 6:10-CV-92, 2011 WL 3439929, at *6 (E.D. Tex. Aug. 5, 2011) ("In its briefing, Avago originally

14

provided "information relating to position, *such as movement*" as its alternative construction. During the *Markman* hearing, Avago changed its proposed construction . . .").

Reducing the number of asserted claims and withdrawing complicated means-plus-function claims minimizes, rather than enhances, the litigation burden on the parties and the Court and is entirely appropriate.   Parties also routinely offer alternative constructions – especially when advocating against any construction.  *See, e.g. Eli Lilly & Co. v. Bd. of Regents of Univ. of Washington*, 334 F.3d 1264, 1266 (Fed. Cir. 2003) ("Lilly proposed two alternative constructions of claim 1 of the '529 patent."); *2-Way Computing, Inc. v. Sprint Nextel Corp.*, C.A. No. 2:11-CV-12 JCM PAL, 2013 WL 2218010, at *6 (D. Nev. May 17, 2013) ("However, after the *Markman* hearing, defendants proposed the alternative claim construction ultimately adopted by the magistrate judge . . ."); *Bayer CropScience AG v. Dow AgroSciences LLC*, CIV. 10-1045 RMB/JS, 2012 WL 4498527, at *3 (D. Del. Sept. 27, 2012) (acknowledging argument that "*alternative construction* would be even more limited"); *Cadence Pharm., Inc. v. Paddock Labs. Inc.*, 886 F. Supp. 2d 445, 461 (D. Del. 2012) (listing "Plaintiffs' Alternative Proposed Constructions"); *Realtime Data, LLC v. Morgan Stanley*, C.A. No. 11 CIV. 6696 KBF, 2012 WL 3158196, at *3 (S.D.N.Y. Aug. 2, 2012) (". . . plaintiff's assertions regarding the doctrine of equivalents are based on the parties' proposed alternative claim constructions."); *Commissariat a l'Energie Atomique v. Samsung Electronics Co.*, 524 F. Supp. 2d 498, 509 (D. Del. 2007) ("As an alternative, should the court construe that phrase as two claim terms, CEA's proposed construction of 'uniaxial medium' is 'a birefringent medium wherein the extraordinary index exceeds an ordinary index or vice versa.'").  The Court even commended the parties' efforts to narrow their disputes at the claim construction hearing.  (Brauerman Decl., Ex. D at 8:6-13 ("So I guess I would just say, I do appreciate the filing of the revised joint claim construction chart,

both because it tells me what is actually still in dispute and also because, besides for resolving three of the terms, it seems like you also narrowed the disputes on many of the other terms, so all of that is appreciated.").)   NetApp has not proven that Parallel Iron engaged in litigation misconduct with respect to its approach to claim construction and the Court should deny the Motion.

### D.      The Court Already Determined That Parallel Iron Did Not Act In Bad Faith

NetApp does not cite any factual or legal evidence upon which the Court could conclude that this litigation was objectively baseless.  The Court did not issue a claim construction ruling, did not enter or deny summary judgment, and the case did not proceed to a jury verdict.  Instead, the case was resolved, consensually, through two separate license agreements from which NetApp benefitted, before any decision on the merits.  On this record, NetApp has not carried its burden to prove that the litigation was objectively baseless.  *Commonwealth Research Grp. LLC v. Lattice Semiconductor Corp.*, C.A. No. 11-655-RGA, 2012 WL 2501107, at *2 (D. Del. June 28, 2012) ("While I suspect that the litigation may be objectively baseless, I cannot so conclude, at least in part due to the termination of this case before a deposition was taken, before the completion of claim construction briefing, before the holding of a *Markman* hearing, and before any actual claim construction by me."). Moreover, and contrary to NetApp's unsupported assertion, Parallel Iron did not withdraw its pNFS related claims because of the infringement read, but rather because Parallel Iron learned that the recoverable damages for NetApp's pNFS-related infringement were small.  (Dodd Decl. ¶ 8.)  NetApp does not cite, and Parallel Iron could not locate, a single decision finding a case exceptional following a stipulated dismissal before any adverse ruling on the merits.  There is no reason to make new law here and the Court should deny NetApp's Motion.

16

NetApp's subjective bad faith argument also must fail for several reasons. First and most importantly, the Court already found that Parallel Iron did not engage in bad faith in connection with the amendments to its Paragraph 4(a) Disclosures. (*See* Sept. 27, 2013 Trans. at 25:18-21 ("I don't think that plaintiff intentionally led you down the wrong path. I'm quite convinced that's not what they were trying to do.").) Second, none of the factors indicative of subjective bad faith exist here and NetApp does not prove any. *See Kilopass Tech. Inc. v. Sidense Corp.*, 738 F.3d 1302, 1311 (Fed. Cir. 2013) ("Factors such as the failure to conduct an adequate pre-suit investigation, vexatious or unduly burdensome litigation tactics, misconduct in procuring the patent, or an oppressive purpose . . . can indicate bad faith."). As described above, Parallel Iron conducted a thorough pre-filing investigation. There is no evidence that Parallel Iron's four requests for admission are vexations or burdensome litigation tactics and Parallel Iron did not act with an oppressive purpose. NetApp's unsubstantiated arguments about the motives it attributes to Parallel Iron are inconsistent with the record and are not sufficient to carry its burden to show that Parallel Iron acted with subjective bad faith. The Court should, therefore, deny the Motion.

### E. NetApp Makes No Argument To Justify Fees, Even If The Case Were "Exceptional"

Even if NetApp could show that this case were exceptional, NetApp would also need to show that this is an exceptional case that justifies fee shifting. *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327 (Fed. Cir. 2003). "[T]he award of attorney fees is not automatic, even for the extraordinary case." *Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1197 (Fed. Cir. 1996); *Matsushita Battery Indus. Co. v. Energy Conversion Devices, Inc.,* No. 96-101-SLR, 1997 WL 811563, at *7-*8 (D. Del. Dec. 23, 1997) (stating that even if court found bad faith, "in balancing the equities an award of attorneys' fees would not serve the interest of justice" and noting court's discretion not to award fees). NetApp does not even attempt to make the requisite

17

showing or demonstrate that the fees it seeks are reasonable.  (*See generally* Op. Br.)  NetApp's

failure is dispositive and the Court should deny the Motion on that basis.  *Integrated Tech. Corp.*

*v. Rudolph Technologies, Inc.*, 734 F.3d 1352, 1360 (Fed. Cir. 2013) ("The court must first

determine whether the prevailing party has proved by clear and convincing evidence that the case

is exceptional, which we review for clear error.  Next, the court *must* determine whether an

award of fees is justified.") (emphasis added).  Even if the Court finds this case exceptional,

Parallel Iron objects to the $480,000 in fees that NetApp seeks.  Parallel Iron reserves the right to

submit additional briefing on the amount of any fee award in the event the Court overlooks

NetApp's failure of proof, finds this case exceptional and decides to award fees.

### F.     The Court Should Not Award Fees Pursuant to Its Inherent Power

While Parallel Iron recognizes that the Court has the inherent power to impose sanctions

pursuant to its right to manage its own proceedings, there is no basis to do so in this case.  As

NetApp recognizes, the Court may assess attorneys' fees "when a party has acted in bad faith,

vexatiously, wantonly, or for oppressive reasons."  (Op. Br. at 19 *citing Chambers v. NASCO,*

*Inc.*, 50 U.S. 32, 45-46 (1991)).  The entirety of NetApp's analysis under the Court's inherent

power consists of a conclusory statement, disproven above, that Parallel Iron "has acted in bath

faith, vexatiously, wantonly, or for oppressive reasons" and a quotation of the Court's sympathy

towards NetApp's frustration following the withdrawal of Parallel Iron's pNFS related

contentions.  (Op. Br. at 19.)  The Court's statement, made without the benefit of an explanation

of Parallel Iron's decision to withdraw its pNFS-related allegations, does not demonstrate that

Parallel Iron acted in bad faith, vexatiously, wantonly or for oppressive reasons.  To the contrary,

Parallel Iron's Amended and Second Amended Paragraph 4(a) Disclosures were permitted by the

rules, affirmed by the Court, identified products other than and in addition to pNFS and do not

provide any basis to shift fees under the Court's inherent authority.  NetApp has failed to demonstrate that fee shifting is appropriate here and the Court should deny the Motion.

## IV.     CONCLUSION

NetApp has failed to carry its burden to prove that it is a prevailing party, that this case is exceptional and that an award of attorneys' fees and costs is warranted. The Court should, therefore, deny the Motion.

May 19, 2014

**Redacted Version Filed: May 20, 2014**

BAYARD, P.A.

 /s/ Stephen B. Brauerman
Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (vt5398)
Sara E. Bussiere (sb5725)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com
sbussiere@bayardlaw.com

*Attorneys for Plaintiff Parallel Iron, LLC*