IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PARALLEL IRON, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-769 (RGA) |
| | ) | |
| NETAPP, INC., | ) | PUBLIC VERSION - REDACTED |
| | ) | |
| Defendant. | ) | |

**DEFENDANT NETAPP, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DECLARE CASE EXCEPTIONAL AND AWARD ATTORNEYS' FEES UNDER 35 U.S.C. § 285 AND THIS COURT'S INHERENT POWER**

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>Jack B. Blumenfeld (#1014)<br>Rodger D. Smith II (#3778)<br>Michael J. Flynn (#5333)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899<br>(302) 658-9200<br>jblumenfeld@mnat.com |
| OF COUNSEL: | rsmith@mnat.com<br>mflynn@mnat.com |
| David J. F. Gross<br>FAEGRE BAKER DANIELS LLP<br>2200 Wells Fargo Center<br>90 S. Seventh Street<br>Minneapolis, MN  55402<br>(612) 766-7000 | *Attorneys for Defendant NetApp, Inc.* |
| Natalie Hanlon-Leh<br>Mary V. Sooter<br>Joel D. Sayres<br>Christopher L Larson<br>FAEGRE BAKER DANIELS LLP<br>3200 Wells Fargo Center<br>1700 Lincoln Street<br>Denver, CO  80203<br>(303) 607-3500 | |

Original Filing Date: June 12, 2014
Redacted Filing Date: June 12, 2014

## **TABLE OF CONTENTS**

**Page**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | ARGUMENT | | 1 |
| | A. | The Supreme Court Has Clarified That An Exceptional Case Is Simply One That Stands Out From Others | 1 |
| | B. | NetApp is the Prevailing Party | 2 |
| | C. | PI's Litigation Conduct and its Admissions in its Answering Brief Confirm That This Case is Exceptional | 4 |
| | | 1. PI's Answering Brief Confirms That It Had No Reasonable Basis for Bringing This Suit | 4 |
| | | 2. PI Misstates Its Own Disclosures and Ignores the Fact That It Refused to Respond to NetApp's Repeated Inquiries Regarding pNFS | 6 |
| | | 3. PI Litigated The Case In An Unreasonable Manner | 7 |
| III. | CONCLUSION | | 10 |

# TABLE OF AUTHORITIES

**CASES**

*Chambers v. NASCO, Inc.*,
    50 U.S. 32 (1991).................................................................................................................4

*Highway Equip. Co. v. FECO, Ltd.*,
    469 F.3d 1027 (Fed. Cir. 2006)............................................................................................3

*Kilopass Tech., Inc. v. Sidense Corp.*,
    738 F.3d 1302 (Fed. Cir. 2013)....................................................................................1, 5, 6

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014).................................................................................................1, 2, 6

**RULES AND STATUTES**

35 U.S.C. § 285...........................................................................................................................2, 3

Fed. R. Civ. P. 41(a)(2)....................................................................................................................3

Fed. R. Civ. P. 54.........................................................................................................................3, 4

**I.     INTRODUCTION**

PI had no reasonable basis for bringing this suit; repeatedly identified pNFS as *the* accused instrumentality; ignored NetApp's inquiries regarding PI's claims against pNFS; dropped pNFS without informing NetApp; and took a minimalist and prejudicial approach to the litigation. PI's answering brief does not change these basic facts; instead, PI tries to justify its actions by asserting numerous misstatements of fact and direct contradictions from PI's prior representations to NetApp and to the Court. PI also attempts to excuse its actions by viewing each act in isolation, rather than address its pattern of litigation misconduct. At the end of the day, particularly under the standard clarified by the Supreme Court in *Octane Fitness*, this case is exceptional, and fees are warranted.

**II.    ARGUMENT**

**A.     The Supreme Court Has Clarified That An Exceptional Case Is Simply One That Stands Out From Others**

After NetApp filed its opening brief, the Supreme Court held that "an 'exceptional' case is *simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.*" *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). The Court further held that there is no "precise rule or formula" for determining exceptionality, and that "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* Thus, although the Federal Circuit's previous standard allowed for a finding of exceptionality in myriad circumstances, *see Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1308-09 (Fed. Cir. 2013), the Court's decision clarified that there are no specific factors that must be satisfied to reach a finding of exceptionality.

In a footnote in its answering brief, PI argues that the Court should refuse to apply the Supreme Court's decision because NetApp purportedly "did not ask the Court to apply the more liberal *Octane* standard." (Ans. Br. at 6 n.4).[1] This is meritless—at the time NetApp filed its brief, *Octane* had not been decided. In addition, the petitioner in *Octane*, although arguing for a more equitable and discretionary test, did not specifically advance the "stands out from others" standard ultimately adopted by the Supreme Court. In other words, at the time NetApp filed its brief, there was no "*Octane* standard." The Supreme Court has now clarified the proper standard of exceptional case determinations under Section 285, which applies to this case.

B.     **NetApp is the Prevailing Party**

NetApp is clearly the prevailing party, particularly as to the heart of the issue, pNFS. As discussed in NetApp's opening brief, NetApp repeatedly challenged PI's assertion of pNFS against NetApp, and called for PI to dismiss its case. (D.I. 43, Exs. D, G.) There is no dispute that in August 2013, PI finally told NetApp that it was withdrawing pNFS from the case.[2] (D.I. 43, at 2; D.I. 61 (Sayres Decl.), Ex. D at 10-11.) Once the remaining issues were resolved

---

[1] In the one case cited by PI, *Bianco v. Globus Medical, Inc.*, the court had already ruled on the motion for fees before the Supreme Court decided *Octane Fitness*. *See* C.A. No. 2:12-CV-00147-WCB, 2014 WL 1904228, at *1 (E.D. Tex. May 12, 2014).

[2] PI's new assertion in its answering brief that it dropped its pNFS allegation not due to their weakness but because "the damages associated with NetApp's pNFS related infringement were minimal" (Ans. Br. at 10) is a complete about-face from its past representations to NetApp and to this Court, and should not be entertained. Specifically, in response to NetApp's motion to strike, PI defended its dropping of pNFS as a response to information provided by NetApp after PI's initial disclosures. PI told the Court that ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ (D.I. 44, at 2 (emphasis added)), and that "before we served the 4(c)s, they told us by the way this E-series platform doesn't use pNFS. And that's what the Rules are supposed to design to function, to allow us to find information as to how these products work and then **match an infringement theory to it**. **So once we found out they didn't use pNFS, they do this Hadoop, we charted Hadoop**... Yes, they didn't use pNFS." (D.I. 61, Ex. D at 10-11 (emphasis added)). Moreover, PI's new contention is simply not credible given that no damages discovery was ever exchanged between the parties in this case.

pursuant to ███████████████████████████

███████████, the parties filed a Stipulation of Dismissal with Prejudice under Rule 41(a)(2), which the Court granted. (D.I. 56.) Accordingly, PI is barred from ever asserting the patents-in-suit against NetApp based on pNFS, and the Court's order constitutes "a judicially sanctioned change in the legal relationship of the parties," rendering NetApp the prevailing party. *Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006).

Indeed, contrary to PI's arguments, *Highway Equipment* confirms NetApp's status as the prevailing party in this case. In *Highway Equipment*, parties filed a stipulation and motion for dismissal with prejudice, and the plaintiff filed separately a covenant not to sue. *Id.* at 1030. The court granted the stipulation and found that the defendant was the prevailing party for the purposes of Section 285. *Id.* at 1030-31. On appeal, the plaintiff made the same argument that PI makes here—that "its strategic decision to file the covenant and not to assert its infringement claim reveals nothing about the merits of [its] case," and that "because the covenant cannot be construed as anything other than an abandonment of the litigation, the dismissal, even though characterized as 'with prejudice,' did not and could not change the legal relationship between the parties on the merits of the underlying claim." *Id.* at 1033.

The court rejected plaintiff's arguments, concluding that "the dismissal with prejudice, based on the covenant and granted pursuant to the district court's discretion under Rule 41(a)(2), has the necessary judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of the parties, such that the district court properly could entertain [defendant's] fee claim under 35 U.S.C. § 285." *Id.* at 1035. The court noted that it treated "the prevailing party issue under Rule 54 and [Section 285] similarly," and that the Federal Circuit had already held that "a defendant was the prevailing party for purposes of costs under Rule 54 where the plaintiff

3

voluntarily dismissed its case against one defendant with prejudice." *Id.* The court further noted that its holding was consistent with other circuits holding that voluntary dismissal with prejudice confers prevailing party status. *Id.* at 1036. And the court noted that to hold otherwise would "encourage the litigation of unreasonable or groundless claims" because defendants would be forced to oppose a plaintiff's voluntary dismissal with prejudice or give up their ability to seek fees. *Id.* at 1035.

Here, PI dismissed its claims against NetApp with prejudice, which the Court confirmed in its Order, meaning that PI can no longer assert these claims against NetApp. As in *Highway Equipment*, if PI's position were adopted, NetApp would be forced to oppose the dismissal even though PI completely released its claims against NetApp—a nonsensical result that would only encourage needless litigation. NetApp is clearly the prevailing party.[3]

### C. PI's Litigation Conduct and its Admissions in its Answering Brief Confirm That This Case is Exceptional

1. <u>PI's Answering Brief Confirms That It Had No Reasonable Basis for Bringing This Suit</u>

Throughout this case, NetApp attempted to obtain the bases for PI's assertion of its patents against pNFS, through correspondence and written discovery. (D.I. 43-1, Exs. D-G.) At all times, PI either ignored NetApp or failed to provide any response other than pointing to its infringement contentions. (*Id.*, Ex. E at 6.) Now, in its answering brief, PI claims it completed pre-suit infringement analyses and that its 4(c) disclosures reflect those analyses. (Ans. Br. at 9-11.) PI's contentions are once again contrary to its earlier representations to NetApp and to the Court, and confirm that it never had a reasonable basis to file this suit against NetApp.

---

[3] Even if NetApp is not a prevailing party, the Court still has discretion to award fees in this case under its inherent authority. *See* Op. Br. at 18-19; *Chambers v. NASCO, Inc.*, 50 U.S. 32, 45-46 (1991). As explained in NetApp's opening brief and herein, PI's conduct in this litigation warrants a discretionary award of fees.

4

First, PI defends its pre-suit investigation by arguing that it prepared pre-suit infringement charts, and that its failure to produce these charts or any other evidence of its pre-suit investigation (despite NetApp's repeated requests) is justified on privilege grounds. (Ans. Br. at 9.) However, PI admits that "Mr. Dodd, one of the named inventors, performed **his own** extensive analysis concerning NetApp's infringement." (Ans. Br. at 3 (emphasis added).) Mr. Dodd is not an attorney, and PI has pointed to no basis to withhold his independent analysis.[4] NetApp believes that documents reflecting PI's pre-suit investigation should be produced, but if there is concern about privilege, NetApp does not object to an *in camera* review. PI should not be able to use its purported analyses as both a sword and a shield.[5]

Second, PI contends that before filing suit it prepared claims charts concerning "NetApp's FAS6200 Enterprise Storage System, and NetApp's Hadoop related-products." (Dodd Decl., D.I. 69, ¶ 6.) In other words, PI claims the product categories identified in its late 4(a) disclosures—the FAS6200 and Hadoop—were analyzed by PI *before* filing suit, yet PI failed to name them in its Complaint or its initial 4(a) disclosures. If PI performed these analyses before filing suit, it held back these contentions *for over ten months*,[6] causing NetApp to focus and spend considerable resources on pNFS. And it means PI misrepresented to the Court and NetApp the reasons for its late disclosures of FAS6200 and Hadoop, which PI has always

---

[4]   PI also claims that it hired an expert for $32,000 to conduct an infringement analysis. (Dodd Decl., D.I. 69, ¶ 7.) This, too, is not privileged and should have been produced. Moreover, PI does not say whether that amount was for pre-suit analysis as to NetApp, or included the 36 other defendants PI sued on these same patents.

[5]   Contrary to PI's claim, even if PI prepared a pre-suit infringement chart, this alone is not sufficient to avoid an exceptional case finding. *See Kilopass*, 738 F.3d at 1307, 1310-11 (noting that in denying fees, the district court erred by relying solely on a preliminary infringement chart prepared by counsel and plaintiff's own independent infringement analysis).

[6]   PI first disclosed the FAS6200 on April 23, 2013, and first disclosed Hadoop on May 7, 2013—both over 10 months after PI filed its Complaint on June 12, 2012.

5

maintained was due to information it discovered *after* filing its initial 4(a) disclosures. *See* n.2, *supra*; D.I. 61, Ex. D at 11 ("So once we found out they didn't use pNFS, they do this Hadoop, we charted Hadoop."). In other words, PI has changed its explanation for abandoning pNFS and adopting a new infringement theory. First it said it had no pre-suit analysis on the FAS6200 and Hadoop; now it says it did do a pre-suit analysis (and necessarily withheld its identification of accused products for months). Either situation "stands out from others with respect to . . . the unreasonable manner in which the case was litigated." *Octane*, 134 S. Ct. at 1756.

In the end, the only tangible evidence PI offers for its pre-suit investigation is its Paragraph 4(c) disclosures, contending that its infringement contentions "more than substantiate Parallel Iron's investigation." (Ans. Br. at 10-11.) This is telling, because as PI concedes, **its infringement contentions do not once reference or implicate pNFS**. Thus, PI's contentions (which supposedly reflect PI's pre-suit investigation) confirm that PI never had any basis to accuse pNFS in this case. This alone supports an exceptionality finding, even under the pre-*Octane* standard. *See Kilopass,* 738 F.3d at 1317.

        2.    <u>PI Misstates Its Own Disclosures and Ignores the Fact That It Refused to Respond to NetApp's Repeated Inquiries Regarding pNFS</u>

In trying to justify its repeated identification of pNFS in its Paragraph 4(a) disclosures, amended disclosures, and second amended disclosures, only to drop pNFS without notice to NetApp, PI fundamentally misstates the facts. PI argues that it did not identify pNFS as "*the* accused system" in its amended disclosures because it referenced the FAS6200 and Hadoop. (Ans. Br. at 12.) This is incorrect. *All* of PI's disclosures identify pNFS as *the* accused instrumentality: "Parallel Iron is asserting [the patents-in-suit] against **all of NetApp's products and/or services that implement the parallel Network File System (the "Accused Instrumentalities") including, but not limited to** . . . ." (D.I. 43-1, Ex. C at 1 (emphasis

6

added).) Thus, PI made clear to NetApp: (1) that pNFS was the accused instrumentality; and (2) that PI considered FAS6200 and Hadoop as subsets within that instrumentality.

Moreover, PI's answering brief omits important facts in the history of this litigation. Faced with PI's repeated identification of pNFS (for which NetApp strongly believed there was no objective basis), and PI's categorization of FAS6200 and Hadoop as subsets, NetApp tried to get clarification from PI, as well as the basis for its assertion of the patents against pNFS. Shortly after receiving PI's second amended disclosures, NetApp sent a letter to PI outlining these concerns and questions about pNFS. (*Id.*, Ex. D.) At that point, PI could have clarified its disclosures. It could have told NetApp that it was no longer accusing pNFS, and that it was accusing other products.[7] Instead, consistent with its overall approach to the litigation, PI simply ignored NetApp's letter. Then, when faced with NetApp's discovery requests directed to pNFS, PI could have told NetApp at that point that pNFS was out of the case. Instead, PI waited over two months for yet another letter from NetApp in August 2013 before it told NetApp on a follow-up call that it had dropped pNFS. This sort of litigation conduct qualifies as exceptional.

          3.    <u>PI Litigated The Case In An Unreasonable Manner</u>

Faced with a litany of inappropriate conduct during the litigation, PI takes each example in isolation and argues that it does not amount to litigation misconduct. (Ans. Br. at 12-16.)

---

[7]    In its answering brief, PI once again completely contradicts its prior representations to the Court and NetApp. Previously, PI had argued that it dropped pNFS in May 2013, at the time it served its 4(c) infringement contentions. (D.I. 61, Ex. D at 10-11 ("[B]efore we served the 4(c)s, they told us by the way this E-series platform doesn't use pNFS. . . . So once we found out they didn't use pNFS, they do this Hadoop, we charted Hadoop."); 13). Now, PI argues that it "authorized its counsel it withdraw allegations relating to the pNFS in August, 2013." If PI still considered pNFS to be in the case, why was it not included in PI's Paragraph 4(c) disclosures? This further illustrates that PI consistently kept NetApp in the dark about what was really being accused and refused to respond to NetApp's repeated inquiries.

7

However, it is the consistent pattern of PI's approach to this litigation that "stands out from others with respect to . . . the unreasonable manner in which the case was litigated."

First, PI filed a boilerplate complaint naming pNFS without any other detail as to accused products. PI argues that the fact that the Court dismissed its Complaint against another defendant in a related case is inconsequential, but PI ignores that that complaint was identical in all material respects with its complaint against NetApp (and dozens of other defendants). *Compare* D.I. 1, *with* C.A. No. 12-917, D.I. 1. The fact that NetApp did not challenge the Complaint due to already increasing litigation costs does not make PI's actions reasonable.

As described above, PI continued its identification of pNFS in its initial Paragraph 4(a) disclosures and untimely amended and second amended Paragraph 4(a) disclosures. It ignored NetApp's requests for information, remained silent through NetApp's discovery requests seeking information regarding PI's identification of pNFS, and only informed NetApp that it was dropping pNFS after NetApp itself again raised the issue in August 2013. (D.I. 62 at 6-10.)[8]

With respect to discovery, PI argues that its delay in serving documents is justified because NetApp did not meet and confer with PI or avail itself of discovery dispute procedures. (Ans. Br. at 13.) PI ignores the timing and effects of its delay in responding to NetApp's discovery. PI did not complete its document production until September 28, 2013; by that point NetApp had already sought a discovery dispute hearing regarding the pNFS issue and the Court

---

[8] PI claims that in response to NetApp's requests to strike PI's disclosures based on PI's conduct, the Court stayed the action due to the "customer-suit exception." (Ans. Br. at 2.) Although the parties and the Court did discuss the related Cloudera action and the possibility of a stay, the Court also stated that it could understand why NetApp would not be happy with PI's conduct and why NetApp might have a decent argument that it is entitled to compensation. (D.I. 61, Ex. D at 25, 27.) Accordingly, the Court stated that it would be predisposed to do any reasonable thing NetApp suggested. (*Id.* at 30.) Following the hearing, NetApp requested, and the Court ordered, a stay not only pending the Cloudera action, but pending *all* coordinated PI cases. (D.I. 50.) Thus, the case was not stayed simply based on the "customer-suit" exception.

had already heard the parties and indicated its willingness to grant a stay of the case. (D.I. 61, ¶ 5, Ex. D. at 1.) Thus, there was no reason or opportunity for NetApp to initiate formal discovery dispute procedures because by the time PI finally completed its production NetApp believed (correctly) that the case would be stayed.

PI also argues that its "service of document requests on a different defendant (Amazon) in a different case" does not demonstrate litigation misconduct, "regardless of whether the document requests Parallel Iron served on Amazon were untimely." (Ans. Br. at 13.) This does not tell the full picture. PI did not serve document requests solely on Amazon far after the deadline in the Scheduling Order for document production to be complete; it did so for every non-stayed defendant remaining in the case. *See* Ex. A.

The same applies to claim construction—although the case was stayed as to NetApp for a portion of the claim construction proceedings, PI's actions (which may have affected the claim construction issues in NetApp's case if it had continued) exemplify its minimalist approach to the litigation, which further support that this case stands out from others with respect to the unreasonable manner in which the case was litigated. PI argues that its actions are acceptable because parties routinely develop and refine their claim construction positions. (Ans. Br. at 14.) However, PI ignores the timing of its conduct and the prejudicial effect it had on defendants.

First, PI proposed no terms for construction other than means-plus-function terms. (D.I. 61, ¶ 7; Ex. E.) Then, when forced to propose constructions for other terms based on defendants' identification of those terms, PI simply cut and pasted "plain and ordinary meaning" to all of those terms, even though as the patentee it should have known that the specification set forth special lexicography for a number of terms. (*Id.*, Ex. F at 3-4.) PI then changed its positions to include proposed constructions for the parties' submission of a Joint Claim

9

Construction Chart. (*Id.*, ¶ 9.) NetApp relied on these positions to develop its own claim construction positions. However, without notice to the parties, PI changed its proposed constructions again in its opening claim construction brief, including alternate constructions. (*Id.*) PI then waited until after the defendants hired an expert and used a portion of their answering brief before it dropped its means-plus-function terms, such that it would not need to brief them in its reply. (*Id.*, ¶ 10.) Then, after all briefing was complete, it still attempted to change some of its proposed constructions (thus attempting to deprive defendants of an opportunity to respond). (*Id.*, ¶ 11.)

NetApp agrees that changing one's claim construction position is not litigation misconduct by itself. However, PI's pattern of approaching the whole process cavalierly and in disregard for the plain language of PI's own patents, then changing positions repeatedly and after defendants had relied on PI's prior positions and expended considerable resources, in a way that affected defendants' ability to brief their own positions, is another factor that supports a finding that the litigation has been conducted in an unreasonable manner.

Finally, NetApp has shown that PI's exceptional conduct justifies an award of attorneys' fees. (*See, e.g.*, Op. Br. at 18 (arguing that this case warrants an award of fees given PI's conduct and the intent of Section 285).) PI brought a meritless case, led NetApp down the wrong path for over a year and ignored its requests for information, and conducted the litigation unreasonably. It should be required to reimburse NetApp for its needless losses.

## III. CONCLUSION

NetApp respectfully requests that its motion to declare this case exceptional and to award NetApp fees be granted, and is prepared to provide further proof requested by the Court.

                                            MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                                            */s/ Rodger D. Smith II*

                                            Jack B. Blumenfeld (#1014)
                                            Rodger D. Smith II (#3778)
                                            Michael J. Flynn (#5333)
                                            1201 North Market Street
                                            P.O. Box 1347
                                            Wilmington, DE  19899
                                            (302) 658-9200
                                            jblumenfeld@mnat.com
                                            rsmith@mnat.com
                                            mflynn@mnat.com

OF COUNSEL:                               *Attorneys for Defendant NetApp, Inc.*

Natalie Hanlon-Leh
Joel D. Sayres
FAEGRE BAKER DANIELS LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO  80203
(303) 607-3500

June 12, 2013
8310995