IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PARALLEL IRON, LLC, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | |
| | ) | C.A. No. 12-769 (RGA) |
| NETAPP, INC., | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |

**BRIEF OF *AMICUS CURIAE* DELL INC., HUAWEI TECHNOLOGIES CO., LTD., KASPERSKY LAB ZAO, LIMELIGHT NETWORKS, INC., PNC FINANCIAL SERVICES GROUP, INC., QVC, INC., SAP AMERICA, INC., SAS INSTITUTE INC., VIZIO, INC., AND XILINX INC., IN SUPPORT OF DEFENDANT NETAPP, INC.'S MOTION FOR <u>ATTORNEYS' FEES AND COSTS</u>**

OF COUNSEL:
Steven D. Moore
Darius Samerotte
KILPATRICK TOWNSEND & STOCKTON LLP
Eighth Floor, Two Embarcadero Center
San Francisco, CA 94111
(415) 273-4741
*Of Counsel for Dell Inc., Huawei Technologies Co., Ltd., Kaspersky Lab ZAO, Limelight Networks, Inc., PNC Financial Services Group, Inc., QVC, Inc., SAS Institute Inc., and Xilinx Inc.*

John W. Shaw (No. 3362)
SHAW KELLER LLP
300 Delaware Ave., Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
*Attorneys for Amicus Curiae*

Dated: June 24, 2014

**TABLE OF CONTENTS**

I.   NATURE AND STAGE OF THE PROCEEDINGS ...........................................................1

II.  SUMMARY OF ARGUMENT .......................................................................................1

III. FACTS ..............................................................................................................................3

IV.  ARGUMENT....................................................................................................................4

    A.   NPEs are filing an ever-increasing number of suits and have inherent strategic advantages that unfairly burden defendants.............................................................4

    B.   Fee shifting is appropriate where, as here, a patentee forgoes an adequate pre-suit investigation as part of an unreasonable litigation strategy. ...................................6

V.   CONCLUSION..................................................................................................................8

# **TABLE OF AUTHORITIES**

**Cases** Page(s)

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*,
  393 F.3d 1378 (Fed. Cir. 2005)..................................................................................................6

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
  134 S. Ct. 1744 (2014)..............................................................................................................6

*Lumen View Tech., LLC v. Findthebest.com, Inc.*,
  13 CIV. 3599 DLC, 2014 WL 2440867 (S.D.N.Y. May 30, 2014)..........................................7

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  134 S. Ct. 1749 (2014)..................................................................................................5, 6, 7, 8

**Statutes**

35 U.S.C. § 285............................................................................................................................2, 4, 6

**Other Authorities**

David Segal, *Has Patent, Will Sue: An Alert to Corporate America*, N.Y. TIMES
  (July 13, 2013), http://www.nytimes.com/2013/07/14/business/has-patent-
  will-sue-an-alert-to-corporate-america.html ............................................................................3

PNFS, http://www.pnfs.com ...........................................................................................................7

Randall R. Rader, Colleen Chien & David Hricik, *Make Patent Trolls Pay in
  Court*, N.Y. TIMES (June 4, 2013)............................................................................................5

Fed. R. Civ. P. 11.................................................................................................................2, 5, 6

I.      **NATURE AND STAGE OF THE PROCEEDINGS**

*Amicus Curiae* Dell Inc., Huawei Technologies Co., Ltd., Kaspersky Lab ZAO, Limelight Networks, Inc., PNC Financial Services Group, Inc., QVC, Inc., SAP America, Inc., SAS Institute Inc., VIZIO, Inc., and Xilinx Inc. (collectively "*Amici*") file this *Amicus Curiae* Brief in Support of the Motion for Attorney's Fees and Costs filed by Defendant NetApp, Inc. in this matter (D.I. 62).

II.     **SUMMARY OF ARGUMENT**

While not a problem specific to Non-Practicing Entities ("NPEs"), the economic realities and incentives of NPE litigation encourage some NPEs to perform a very limited pre-suit investigation because the business model often relies on quick settlements against numerous defendants. Indeed, that is exactly Parallel Iron's business model—it has filed 22 suits on the three Bullen patents using largely boilerplate complaints and has resolved almost all of those matters by settlement. There is also little incentive to conduct a more thorough review as filing a complaint shifts all of the cost to the alleged infringer, who is on notice and charged with investigating the alleged infringement, and may be required to produce documents about products not even accused yet of infringement. Such inherent asymmetries alter the traditional litigation dynamic and encourage filing suit before conducting an adequate investigation, because the NPE either expects the case to settle or hopes that the discovery process will reveal information supporting the claim of infringement that the NPE should have investigated, either against the products it initially accused or against other products it accuses later.

*Amici* are all companies who have been subjected to patent cases that lack any merit, and who have been burdened by the high-cost of patent litigation defense. *Amici* are regularly faced with settlement demands by NPEs in meritless patent litigation that present the Hobson's choice of either paying defense costs to fight the case, or paying less than defense costs to settle the

case. Thus, *amici* have an interest in ensuring that only meritorious suits are filed, and that NPEs and other patentees conduct reasonable pre-filing investigations of the products and services they accuse of infringement in their Complaints.

*Amici* respectfully submit that an award of attorney's fees is appropriate here because Parallel Iron named one accused instrumentality in its Complaint and three sets of disclosures, but then abruptly abandoned that infringement theory and accused other products, suggesting that Parallel Iron never had an adequate basis to file this case from the start. Specifically, Parallel Iron accused NetApp's parallel Network File System ("pNFS") in its Complaint and Paragraph 4(a) contentions, only to abandon pNFS and accuse entirely unrelated products after substantial delay. Thus, Parallel Iron used an inadequate investigation of pNFS to "get in the door" with its lawsuit, so that it could use the Court's disclosure procedures to learn about the products it later accused of infringement. A patentee should not be permitted to avoid its obligation to perform a reasonable investigation in this way, and Parallel Iron's failure to pursue the only instrumentality named in its Complaint renders this case extraordinary and subject to a fee award.

The Supreme Court has recently held that courts can use fee shifting when a case is litigated in an "unreasonable manner," even where the conduct is not otherwise sanctionable under Rule 11 or other provisions.[1] When patentees are economically encouraged to skirt the pre-suit investigation required to bring suit, to the detriment of the entire patent system, as was the case here, such cases become exceptional under the meaning of § 285. Thus, where a patentee adopts a litigation strategy that neglects pre-suit investigation and foreseeably imposes substantial unnecessary costs on defendants, courts should employ fee shifting. Having to pay the reasonably foreseeable costs stemming from their chosen litigation strategy would encourage

---

[1] *Amici* take no position on the extent to which PI's conduct may also be sanctionable under Rule 11.

patentees to ensure the adequacy of their investigation before filing. This is fundamentally fair to defendants and would improve the quality of patent suits to the benefit of all involved.

### III. FACTS

The facts relevant to NetApp's motion have been laid out in NetApp, Inc.'s Opening Brief in Support of its Motion for Attorneys' Fees and Costs (D.I. 62). For brevity, *amici* incorporate those facts, and re-emphasize only the most critical facts regarding plaintiff Parallel Iron's (PI) conduct as follows:

PI does not make or sell any products or services and instead asserts patents against other companies. IP Navigation Group, which has sued over 1,600 companies, directed PI in these suits. David Segal, *Has Patent, Will Sue: An Alert to Corporate America*, N.Y. TIMES (July 13, 2013), http://www.nytimes.com/2013/07/14/business/has-patent-will-sue-an-alert-to-corporate-america.html (attached as Exhibit 1).

On June 18, 2012, PI dismissed several suits against NetApp and others in the Eastern District of Texas and filed new suits against NetApp (this action) and seven other defendants. PI sued twenty-nine others soon thereafter. Three patents were asserted in this suit, and PI identified pNFS as the only accused instrumentality.

On February 15, 2013, the Paragraph 4(a) disclosure deadline, PI again accused only pNFS in its disclosures. PI continued to accuse pNFS in two subsequent, amended disclosures.

On May 16, 2013, NetApp wrote to PI and raised concerns about its infringement contentions concerning pNFS; however, this letter went unanswered.

Over three months after the unanswered letter was sent, on August 22, 2013, PI eventually acknowledged that it was no longer accusing pNFS.

3

NetApp spent $480,000 defending against this alleged infringement by pNFS for over a year, and yet PI failed to produce any evidence that would suggest that it conducted a reasonably adequate pre-suit investigation of pNFS's alleged infringement.

PI similarly deferred serving adequate initial disclosures in suits against, at least, EMC and Hitachi.

## IV. ARGUMENT

Under 35 U.S.C. § 285, fees may be awarded in exceptional cases. Where, as here, a patentee relies on an inadequate investigation of a product to open the courthouse door in an effort either to achieve a quick settlement or find out information needed to accuse unrelated products, thereby shifting this investigation to the defendant, the filing of the case is exceptional and warrants an award of fees. This is so because the defendant in that situation must bear the burden of significant fees to investigate and defend a product that the patentee never had an adequate basis to accuse in the first place. Thus, an award of fees under these circumstances will balance the allocation of risk to encourage patentees only to file adequately investigated, potentially meritorious patent infringement suits. This is fundamentally fair to defendants and benefits the entire patent system.

### A. NPEs are filing an ever-increasing number of suits and have inherent strategic advantages that unfairly burden defendants.

The number of filed patent cases has exploded in recent years, which has burdened defendant companies and the judicial system. In the District of Delaware alone, over 1,492 patent cases were filed in 2013, an almost 85% increase from the year prior and an over eight-fold increase from 2004. *See* 2014 Annual Report, U.S. District Court for the District of Delaware, at 10 (attached as Exhibit 2). This influx of suits has also taxed judicial resources, where Delaware averaged 373 patent filings per authorized judgeship last year. *Id*. This is an

over five-fold increase from 2010. *See id*. NPEs account for a staggering number of these cases, making up the top ten plaintiffs nationally that filed the most patent cases in 2013. *See* 2013 Patent Litigation Year in Review, Lex Machina, at i, 8 (attached as Exhibit 3).

Defendants face not only a significant number of NPE suits but also inherent strategic disadvantages throughout the course of litigation. Former Chief Judge Rader of the U.S. Court of Appeals for the Federal Circuit detailed many of these asymmetries in a recent newspaper editorial. Randall R. Rader, Colleen Chien & David Hricik, *Make Patent Trolls Pay in Court*, N.Y. TIMES (June 4, 2013) (attached as Exhibit 4). Particularly relevant here is the need for defendants to assess their alleged infringement and prepare an adequate defense. When defendants are forced to consider products named after an inadequate pre-suit investigation and ultimately dropped from the lawsuit, both time and money are lost. This process is not simply the use of discovery to develop facts in the case. The NPE incurs no extra costs but instead saves money by either delaying a substantive investigation, shifting that burden to the defendant, or avoiding any investigation altogether by using the threat of protracted litigation and discovery to extract a settlement. Neither the federal judicial system nor the discovery process was designed to operate in this way.

Defendants alone are currently burdened with covering these expenses, with $480,000 wasted in the present case.[2] However, it makes little sense to allocate this risk to the defendant alone when it is the NPE making the decision not to investigate an accused product adequately, essentially, assessing the risk that it will not be forced to pay for the defendant's fees responding to its accusations. Before filing suit, a plaintiff should consider having to incur the reasonably

---

[2] Rule 11 may provide some relief in the most egregious instances; however, for a number of reasons, such sanctions are rarely awarded. As discussed below, *Octane Fitness* specifically contemplates the use of fee shifting, even in the absence of otherwise sanctionable conduct under Rule 11.

foreseeable "waste" that its chosen litigation strategy may incur. Failing to award fees in this scenario encourages NPEs to forgo a meaningful initial investigation, resulting in economic waste and weaker suits.

### B. Fee shifting is appropriate where, as here, a patentee forgoes an adequate pre-suit investigation as part of an unreasonable litigation strategy.

Against this backdrop, it is then prudent to consider how patent law may allocate these risks to restore balance and encourage patentees to conduct adequate pre-suit investigations. The Supreme Court's recent decision in *Octane Fitness* provides such a framework. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014). In addressing the fee shifting standard under 35 U.S.C. § 285, the Court noted that the statute's text imposed only the restriction that it be applied in "exceptional" cases, within the ordinary meaning of the word. *Id.* at 1755-56. The Court held:

> [A]n "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or *the unreasonable manner in which the case was litigated*. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Id.* at 1756 (emphasis added). The Court abrogated the Federal Circuit's existing *Brooks Furniture* test, calling it "overly rigid." *Id.* at 1756 (citing *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1379 (Fed. Cir. 2005)). Specifically, it found that "sanctionable conduct is not the appropriate benchmark." *Id*. District courts may award fees even if the unreasonable conduct is not independently sanctionable. *Id.* at 1757. In a related opinion, the Court held that appellate courts should review determinations under § 285 for abuse of discretion. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744 (2014). This provides district courts with the flexibility needed to perform this fact-specific analysis.

A case in which a plaintiff files suit without adequate pre-suit investigation is exceptional under § 285 and *Octane Fitness*, even if this unreasonable conduct is not independently sanctionable under Rule 11. Courts can consider a plaintiff's motivation for bringing suit and the need to "advance considerations of compensation and deterrence" when deciding whether to award fees. *Octane Fitness*, 134 S. Ct. at 1756 n.6; *accord Lumen View Tech., LLC v. Findthebest.com, Inc.*, 13 CIV. 3599 DLC, 2014 WL 2440867 (S.D.N.Y. May 30, 2014) (awarding fees where plaintiff sued numerous defendants without adequate pre-suit investigation in order to extract nuisance settlements). In these cases, plaintiffs have affirmatively chosen a litigation strategy that is likely to produce substantial and unnecessary costs if the suit is not immediately settled. These plaintiffs forgo an adequate pre-suit review and blanket many defendants with boilerplate complaints, yet they are unwilling to cover these costs those defendants accrue. This is an unreasonable litigation tactic, as our system requires plaintiffs to investigate their claims before imposing the burdens of discovery and other litigation costs on defendants. And suits litigated in such a manner stand out from traditional, and often self-enforcing,[3] litigation norms.

While there is always likely to be some debate over whether a pre-suit investigation is adequate, conduct such as that of PI in this case, especially when it occurs as part of a general pattern, indicates an inadequate investigation. There will certainly be times where discovery alters a plaintiff's infringement contentions, but PI has failed to provide any reasonable explanation for its behavior here. At least with regard to pNFS, discovery does not appear to have revealed anything that would alter PI's infringement position. Indeed, the pNFS spec

---

[3] Competitor suits, for example, are less likely to have strategic disparities, and therefore, both litigants are more likely to minimize unnecessary costs.

7

appears to be implemented as a series of public standards. *See* PNFS, http://www.pnfs.com (last visited June 13, 2014) (discussing pNFS specifications and standards).

Instead, PI's accusing then dropping pNFS without explanation shows that a mere cursory review was performed prior to filing suit. In essence, pNFS was used as a placeholder that would suffice to meet the goals of having the suit provide leverage to extract a settlement. Further, the number, timing, and treatment of its other suits suggest a general pattern of adventurous litigation strategy. Once PI was forced to pursue its case further, however, it dropped pNFS in favor of other products, showing it never had a legitimate basis to pursue pNFS in the first place. Accordingly, PI's strategy was designed to impose costs on NetApp for investigating and defending against an infringement theory that PI never had any basis or intention to pursue. Such conduct should be held to be an unreasonable manner of litigating a patent case such as this one, particularly a case involving as many defendants as PI sued here. Therefore, this case should be deemed exceptional, and PI should be required to pay NetApp's attorney's fees.

### V. CONCLUSION

Patentees should not be encouraged to use a meritless suit as leverage to extract nuisance settlements. Where this is done, as evidenced by accusing a product that the patentee had no basis to accuse and then dropped in realization of that fact, courts should consider these tactics to be an unreasonable manner of litigating and thus "exceptional," even in the absence of independently sanctionable conduct. This is consistent with the Supreme Court's decision in *Octane Fitness*.

Holding patentees accountable for adopting litigation strategies that neglect pre-suit investigation would remove the current economic incentive to file immediately and often. It does not discourage, or even affect, the filing of meritorious suits but can help to correct the currently

skewed litigation landscape in this area. This is fundamentally fair to all parties and has a chance to improve the quality of suits filed for the benefit of all.

For the foregoing reasons, *amici* respectfully submit that NetApp's Motion for Attorneys' Fees and Costs should be granted.

Respectfully submitted,

| | |
|---|---|
| | */s/ John W. Shaw* |
| OF COUNSEL: | John W. Shaw (No. 3362) |
| Steven D. Moore | SHAW KELLER LLP |
| Darius Samerotte | 300 Delaware Avenue, Suite 1120 |
| KILPATRICK TOWNSEND & STOCKTON LLP | Wilmington, DE 19801 |
| Eighth Floor, Two Embarcadero Center | (302) 298-0700 |
| San Francisco, CA 94111 | jshaw@shawkeller.com |
| (415) 273-4741 | *Attorneys for Amicus Curiae* |

*Of counsel for Dell Inc., Huawei Technologies Co., Ltd., Kaspersky Lab ZAO, Limelight Networks, Inc., PNC Financial Services Group, Inc., QVC, Inc., SAS Institute Inc., and Xilinx Inc.*

Dated: June 24, 2014

9