IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**Parallel Iron LLC,**

Plaintiff;

v.

**NetApp, Inc.,**

Defendant.

Civil Action No. 12-769-RGA

MEMORANDUM OPINION

Richard D. Kirk, Esq., Bayard, PA, Wilmington, DE; Stephen B. Brauerman, Esq., Bayard, PA, Wilmington, DE; Vanessa R. Tiradentes, Esq., Bayard, PA, Wilmington, DE; Sara E. Bussiere, Esq., Bayard, PA, Wilmington, DE, attorneys for the Plaintiff.

Jack B. Blumenfeld, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; Rodger D. Smith, II, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; Michael J. Flynn, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; Natalie Hanlon-Leh, Esq., Faegre, Baker, Daniels LLP, Denver, CO; Joel D. Sayres, Esq., Faegre, Baker, Daniels LLP, Denver, CO, attorneys for the Defendant.

March 25, 2015

**ANDREWS, U.S. DISTRICT JUDGE:**

Currently before the Court is Defendant NetApp, Inc.'s request for attorney's fees. (D.I. 94). This matter has been fully briefed. (D.I. 94, 103, 104). For the reasons set forth herein, Defendant's request is **GRANTED IN PART**. Defendant's requests for discovery and an injunction are **DENIED**.

## BACKGROUND

Plaintiff brought this suit against Defendant on June 18, 2012. (D.I. 1). Plaintiff alleged that Defendant infringes U.S. Patent Nos. 7,197,662, 7,958,388, and 7,543,177. (*Id.*) The complaint identifies the accused products as "by way of example and without limitation, those implementing" parallel Network File System ("pNFS").[1] (*E.g.*, *id.* at ¶ 13). On February 15, 2013 Plaintiff served its Section 4(a) disclosures, which continued to identify the accused products only in relation to their implementation of pNFS, citing one example, the E-Series Platform products. (D.I. 43-1 at 2-3). Plaintiff served its "Amended Disclosures" on April 23, 2013, only identifying products by their use of pNFS, and adding a second example. (*Id.* at 5-6). On May 7, 2013, Plaintiff served its second amended disclosures, which continued to identify accused products based on their use of pNFS and added Hadoop-related products as examples of products implementing pNFS. (*Id.* at 8-9). After receiving Plaintiff's second amended disclosures, Defendant wrote to Plaintiff on May 16, 2013 regarding "(1) the untimeliness of [Plaintiff]'s purported amendments to its disclosures; (2) the failure of [Plaintiff] to sufficiently identify an accused product other than its reference to pNFS; and (3) that the E-Series category of products referenced in [Plaintiff]'s disclosures did not practice pNFS." (D.I. 59 at 13 (citing D.I. 43-1 at 11-14)). Additionally, Defendant's letter requested the pre-suit basis for Plaintiff's

[1] pNFS is an industry standard. Therefore, stating that one uses pNFS describes an overall technology, not a specific product, system, or method.

allegations regarding pNFS. (D.I. 59 at 13; D.I. 43-1 at 16). On May 25, 2013, Plaintiff served 2,600 pages of infringement contentions. (D.I. 59 at 14). The contentions listed specific products, but did not mention pNFS. (*Id.*) The parties had a meet-and-confer call on August 22, 2013, during which Plaintiff confirmed that it was no longer accusing pNFS. (*Id.* at 15).

Based upon Plaintiff's indication that it was no longer accusing pNFS, Defendant requested a discovery dispute conference with the Court, and filed a discovery dispute letter as per the scheduling order for this case. (D.I. 43). The Court held a discovery conference on September 27, 2013. (D.I. 47). Based upon a joint stipulation (D.I. 49), the Court granted a stay of this case on October 10, 2013, pending the final resolution of several related cases involving the same patents. (D.I. 50). The Court granted this stay in part as a remedy to Defendant for Plaintiff's altering its allegations from pNFS to Hadoop. (*Id.* at 1).

On January 22, 2014, Plaintiff granted a license to the asserted patents to Unified Patents, Inc.[2] (D.I. 59 at 16; D.I. 82 at 7). The agreement granted a sublicense to Defendant, with no requirement for Defendant to pay any money to Plaintiff. (*Id.*).

On March 31, 2014, NetApp moved for attorney's fees under 35 U.S.C. § 285 and the Court's inherent powers. (D.I. 58). The Court granted the motion on September 12, 2014. (D.I. 92). The Court did not grant fees under § 285 because Defendant was not a "prevailing party," since the suit was resolved by way of a license agreement and not a decision on the merits. (D.I. 91 at p. 8). However, the Court granted attorney's fees under its inherent powers because it found that Plaintiff acted "in bad faith, vexatiously, and wantonly as it brought this suit without a good faith basis and then continued to litigate the case via a misleading and prejudicial litigation strategy." (*Id.* at pp. 9-10).

---

[2] The Court did not receive a copy of this license agreement.

After an *in camera* review of all the materials gathered and created as part of Plaintiff's pre-suit investigation, the Court found that Plaintiff initiated the suit without a good-faith belief that the accused instrumentalities implemented pNFS in an infringing manner. (*Id.* at p. 11). The Court further found that Plaintiff "provided no evidence that there was even a minimal investigation into NetApp's actual implementation of pNFS." (*Id.* at p. 12). The Court found that Plaintiff then "strung the Defendant along for one year, one month, and eighteen days stating that they were accusing products that implemented pNFS, only to state, when directly asked in an interrogatory, that they had no intention of accusing products implementing the pNFS standard." (*Id.* at p. 11 (footnotes omitted)). The Court found that such conduct warranted an award of attorney's fees "not only to compensate NetApp, but also to deter Parallel Iron from continuing to litigate in such a manner in the future." (*Id.* at p. 15).

**LEGAL STANDARD**

"It has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (internal quotation marks and brackets omitted). The court's "power reaches both conduct before the court and that beyond the court's confines" as the underlying purpose of the court's power is to stem "disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial." *Id.* at 44 (internal quotation marks and brackets omitted). Furthermore, a court "may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46 (internal quotation marks omitted). The Third Circuit has held, "In exercising its discretion under its inherent powers, the court should be guided by the same considerations that guide it in the imposition of

sanctions under the Federal Rules." *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994).

"The court calculates attorney fees pursuant to the 'lodestar' approach. The lodestar amount results from multiplying the amount of time reasonably expended by reasonable hourly rates. . . . The prevailing community market rates assist the court in determining a reasonable hourly rate." *Asahi Glass Co. v. Guardian Indus. Corp.*, 2013 WL 936451, at *1 (D. Del. Mar. 11, 2013) (internal citations omitted). The court should exclude all hours that were not "reasonably expended." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The party seeking fees "bears the burden of establishing the reasonableness of both the time expended and the hourly rates." *Asahi*, 2013 WL 936451, at * 1. Once the amount of time has been multiplied by a reasonable hourly rate, there are several factors a court may consider to adjust the award upwards or downwards. *Id.* at *2. The Court can consider these factors to the extent they are raised by the parties. *Id.* The only factor Plaintiff in this case identified was a reduction based on the "results obtained." (D.I. 103 at p. 10; *see Asahi*, 2013 WL 936451, at *2 n.2).

## ANALYSIS

### A. Fee Award

Defendant seeks attorney's fees in the amount of $594,162,[3] which reflects the fees incurred (1) during the time Plaintiff accused pNFS and (2) in bringing the fee motion. (D.I. 94 at pp. 1-2). Defendant calculated fees based on the lodestar approach, using average rates for New York attorneys as reported by the American Intellectual Property Law Association's Report of the Economic Survey. (*Id.* at pp. 6-7).

[3] Defendant originally requested $594,471. (D.I. 94 at p. 1). Due to a minor reduction in fees from local counsel, Defendant reduced the request to $594,162. (D.I. 104 at p. 10 n.7).

Plaintiff raises four objections. First, Plaintiff argues that the lodestar approach is the incorrect method for calculating the fee award. (D.I. 103 at p. 5). Second, Plaintiff argues that Defendant's fees are unreasonable because they include unnecessary work. (*Id.* at pp. 3-5). Third, Plaintiff argues that Defendant should be denied fees entirely as a sanction for violating Federal Rule of Evidence 408. (*Id.* at p. 7). Fourth, Plaintiff argues that Defendant is not entitled to fees incurred in bringing the fee motion. (*Id.* at pp. 9-10). The Court will address these objections in turn.

1. Lodestar Method

Plaintiff argues that the lodestar approach is the incorrect method to calculate attorney's fees granted under the Court's inherent powers. (D.I. 103 at p. 5). Plaintiff contends that the lodestar method is limited to calculating attorney's fees granted under a statutory fee-shifting provision. (*Id.*). Plaintiff argues that sanctions under the Court's inherent powers must be limited to an amount designed to "remedy the damage done by a litigant's malfeasance." (*Id.* (citations omitted)).

Defendant responds that Plaintiff cites no authority indicating that the lodestar approach should not be used to calculate attorney's fees granted under the Court's inherent powers. (D.I. 104 at p. 5). Defendant argues that fees awarded under § 285 are granted for the same reason Plaintiff identifies as the rationale for fees granted under the Court's inherent powers: "to compensate a defendant for attorney's fees it should not have been forced to incur." (*Id.* (citations omitted)). Since the provisions have the same rationale, Defendant argues that there is no reason to use different methods of calculation. (*Id.*).

The Court finds that the lodestar approach applies to awards granted under the Court's inherent powers, as well as to fee-shifting statutes. Under either provision, fees are awarded as a

sanction for misconduct and to compensate a party for fees incurred as a result of bad faith litigation. Plaintiff does not identify any other method of calculating an amount to "remedy the damage done by a litigant's malfeasance." In addition, fees incurred during the period Plaintiff accused pNFS is the proper amount to remedy Plaintiff's misconduct. The malfeasance that the Court sanctioned was bringing a suit without a good faith basis and continuing to litigate it in a misleading and prejudicial way. (D.I. 91 at pp. 9-10). The damage caused by such misconduct can be measured by the fees Defendant incurred while Plaintiff was misleadingly litigating the case.

The lodestar method is a well-established approach to calculating reasonable attorney's fees, and the Court sees no reason to depart from it. Moreover, other courts have applied the lodestar method to fees awarded under the Court's inherent powers: "When attorney's fees are awarded under the Court's inherent powers, courts use the lodestar approach, which has been held . . . to be the method to be used to determine a reasonable attorney fee in all the federal courts . . . ." *In re Nicholas*, 496 B.R. 69, 74 (Bankr. E.D.N.Y. 2011) (internal quotation marks omitted).

2. Reasonableness of Fees

Plaintiff posits two reasons that Defendant's fee request is unreasonable. First, Plaintiff argues that Defendant is only entitled to fees for work related to the conduct for which Plaintiff was sanctioned. (D.I. 103 at p. 3). Plaintiff maintains that it was sanctioned for identifying pNFS as the accused instrumentality. Therefore, Plaintiff argues that Defendant can only recover fees directly related to investigating pNFS, and not, for example, reviewing the patents and prosecution history, researching prior art, or preparing invalidity contentions. (*Id.* at pp. 3-4).

Second, Plaintiff argues that Defendant's billing structure encouraged unnecessary work and caused Defendant's counsel to frontload work during periods when the case was dormant. (D.I. 103 at pp. 4-5). Defendant entered into a fixed-fee arrangement under which it paid counsel a set amount each month, irrespective of the amount of work performed during that period. (*Id.* at p. 4). Plaintiff argues that the arrangement incentivized defense counsel to perform work earlier than necessary so that counsel "did not substantially exceed the cap on the payments it was to receive when the case started moving." (*Id.* at p. 5). Plaintiff maintains that it should not have to pay for work that was ultimately rendered unnecessary because it entered into a license which disposed of the case. (*Id.*). Plaintiff also asserts that the fees incurred by Defendant's local counsel were minimal, which demonstrates that the fees Defendant requests are unreasonable.

Defendant argues that it is entitled to fees beyond those that directly relate to investigating pNFS because, had Plaintiff performed a good faith pre-suit investigation, Plaintiff would not have filed the case at all. (D.I. 104 at p. 1). Defendant notes that the Court awarded fees not only for bringing the suit without a good faith basis, but also because Plaintiff "continued to litigate the case via a misleading and prejudicial strategy." (*Id.* at p. 2 (citing D.I. 91 at pp. 9-10)). Therefore, Defendant argues it is entitled to fees incurred throughout the entire period Plaintiff accused pNFS instrumentalities.

Defendant also argues that its counsel did not perform work earlier than necessary. (*Id.* at p. 3). Defendant notes that Plaintiff failed to identify any specific task that should have been deferred to later in the case. In addition, Defendant argues that the Court already rejected Plaintiff's argument that defense counsel should have delayed work. (*Id.* at p. 4 (citing D.I. 47 at 14)). Defendant further argues that local counsel fees do not have a bearing on the

reasonableness of its overall fee request. It notes that local counsel represented more than twenty defendants in related litigation, all of whom divided the fees between them. (*Id.* at p. 4 n.2).

The Court finds Plaintiff's arguments unavailing. First, Plaintiff misstates the conduct on which the Court based its fee award. The Court did not award fees solely because the complaint identified pNFS. The Court granted attorney's fees because Plaintiff filed the suit without investigating whether the accused instrumentalities used pNFS, and then proceeded to identify the accused instrumentalities solely by reference to pNFS. (D.I. 91 at pp. 9-10). Plaintiff was therefore sanctioned both for filing the suit and for its litigation tactics throughout. The entire period that Plaintiff accused pNFS instrumentalities is therefore the appropriate period for which to award fees.

Furthermore, the Court does not find that defense counsel performed unnecessary, frontloaded work. As I previously held, responsible attorneys would not stand around and wait for months once their client has been accused of infringement and then rush to perform all their work once they get more specific information. (*See* D.I. 47 at 14). It is reasonable to begin investigating and preparing a defense once an infringement suit has been brought.[4] Finally, the Court agrees with Defendant that local counsel fees do not have a bearing on the reasonableness of Defendant's overall fee request. Those fees were shared among more than twenty defendants and would therefore naturally be much lower than fees that were not so split.

3. Federal Rule of Evidence 408

[4] I also do not find the "incentivizing" argument at all persuasive. If a firm gets a flat fee for as long as the litigation lasts, I would think the financial incentive would be to postpone work that may never need to be done, since doing it is not going to increase the fees, and postponing it may result in it never being done. The advantage of the latter alternative is that, if it never needs to be done, the attorney can do other work and be paid for it.

In addition to requesting fees, Defendant requested discovery and an injunction related to an allegation that Plaintiff has been dissipating assets received from settlement agreements.[5] (D.I. 94 at p. 10). Plaintiff argues that by disclosing confidential settlement communications, Defendant violated Federal Rule of Evidence 408. (D.I. 103 at p. 7). Plaintiff requested that the Court decline to grant attorney's fees as a sanction for that violation. (*Id.*). Rule 408 prohibits the use of evidence related to settlement offers and negotiations "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." FED. R. EVID. 408. However, such evidence is admissible if used "for another purpose." *Id.* Plaintiff argues that Defendant offered the settlement agreements as evidence in the same brief in which Defendant sought to prove the amount of attorney's fees, *i.e.*, a disputed claim. (D.I. 103 at p. 8).

Defendant responds that the disputed claim is the amount of fees it should be awarded, and it did not offer settlement evidence to support its fee request. (D.I. 104 at p. 6). Defendant notes that the Third Circuit has held that statements made in the context of settlement negotiations can be considered when calculating a fee award as long as they are not used to prove the merits of the claim. (*Id.* at p. 6 (citing *Lohman v. Duryea Borough*, 574 F.3d 163, 167 (3d Cir. 2009) (holding that settlements offers may be considered for the purpose of determining whether a claim was successful))). Defendant further argues that Plaintiff's inability to pay is not a "disputed claim," but rather an undisputed factual statement. (D.I. 104 at p. 6).

The Court agrees with Defendant that Rule 408 does not apply in this context. Plaintiff's argument is premised on the fact that settlement evidence was submitted in a brief addressing multiple issues. Defendant offered it for an unrelated issue; Defendant did not offer it to prove

[5] *See infra* Section B.

the amount of a disputed claim. As other courts in this Circuit have noted, "Rule 408 does not provide a blanket protection against any and all use of statements made during settlement negotiations." *Benson v. Giant Food Stores, LLC*, 2011 WL 6747421, at *6 (E.D. Pa. Dec. 22, 2011). The fact that Defendant sought to prove the amount of fees owed in one section of a brief does not contaminate the remainder. Indeed, even if the evidence were offered in the fee section, it could be admissible for some other purpose. Defendant did not offer settlement evidence to support its request for attorney's fees. The Court therefore finds that Defendant did not violate Rule 408 and denies Plaintiff's request that the Court sanction Defendant.

4. Fees Incurred in Bringing the Fee Motion

Plaintiff argues that Defendant is not entitled to fees incurred in connection with bringing its fee motion because Defendant's argument only addressed whether such fees can be awarded in cases involving § 285. (D.I. 103 at p. 9). Plaintiff argues that sanctions issued under the Court's inherent authority should be tailored to address misconduct. Because it did not oppose the fee motion in bad faith, the opposition was not misconduct. (*Id.* at p. 10). Plaintiff further argues that the fee motion was largely unsuccessful, because the majority of the motion addressed fees under § 285, which the Court did not grant. (*Id.*). Plaintiff notes that only 1.17 pages of the thirty pages of briefing addressed the Court's inherent authority. (*Id.* at p. 10 n.7). Therefore, Plaintiff argues that if the Court does grant fees in connection with the motion, it should only grant 3.9% of the fees incurred. (*Id.*).

Defendant argues that the purpose of fee awards under both § 285 and the Court's inherent authority is to compensate an injured party for fees it should not have had to incur. (D.I. 104 at p. 8). Defendant notes that if Plaintiff had not engaged in the litigation, it would not have had to expend fees in bringing the fee motion. (*Id.*). Therefore, fees incurred in bringing the

motion relate to the misconduct. (*Id.*). Defendant further argues that cases regarding § 285 are particularly relevant because the Court would have granted attorney's fees under that section had Defendant been the prevailing party. (*Id.*). Defendant argues that refusing to grant fees incurred in connection with bringing a fee motion would undermine the purpose of the fee award by requiring a party to pay more in order to avail itself of relief the Court ordered. (*Id.* at pp. 9-10). Finally, Defendant argues that there is no authority for apportioning fees based on the number of pages spent on different theories, and, in any event, the arguments overlapped. (*Id.* at p. 10 n.5).

The Court finds that Defendant can recover fees incurred in connection with bringing its fee motion. While the Court does not find that Plaintiff opposed the motion in bad faith, the motion would not have been necessary if Plaintiff had not engaged in bad faith litigation. Fees for bringing the motion are therefore tailored to Plaintiff's misconduct. The Court does not agree with Plaintiff's novel argument that Defendant should recover only partial fees based on the number of pages which addressed inherent authority. As Defendant correctly notes, the bases for the request under either theory are the same and the arguments therefore overlap. Contrary to Plaintiff's suggestion that the motion was "largely unsuccessful," the Court granted the motion entirely based on one of two alternate theories. (*See* D.I. 103 at p. 10). Moreover, the universal rule in fee-shifting statutes is that a party may recover fees incurred in connection with bringing a fee motion. The Court sees no reason to depart from this practice because it granted fees under its inherent powers rather than a statute.

<u>5. Amount of Fees</u>

Defendant submitted detailed time records documenting the work counsel performed. (D.I. 97, Exs. B, D). Defendant is not requesting fees for the total number of hours worked, only the amount paid under the fixed-fee arrangement. (D.I. 94 at p. 4). The Court finds that the

hours claimed were reasonably expended. The Court will award fees for the number of hours billed, reduced to take into account the fixed-fee arrangement.

However, the Court does not agree with Defendant's hourly rate. Defendant argues that the Court should look at the rates charged by "attorneys in other highly regarded law firms in New York City." (*Id.* at p. 6 (internal citation omitted)). "[I]n most cases, the relevant rate is the prevailing rate in the forum of the litigation." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005); *accord, Bywaters v. United States*, 670 F.3d 1221, 1232-33 (Fed. Cir. 2012). The forum rule has two limited exceptions: "first, when the need for the special expertise of counsel from a distant district is shown; and, second, when local counsel are unwilling to handle the case." *Interfaith*, 426 F.3d at 705 (internal quotation marks omitted). Applying the forum rule, the hourly rate should be that of Delaware intellectual property attorneys. The exceptions to the forum rule do not apply. A number of Delaware attorneys can, and do, capably litigate patent cases—including attorneys at the firm hired as local counsel. There is no indication that Delaware counsel were unwilling to litigate the case.

The documents submitted to the Court show the number of hours worked and the amount of fees charged. Because of the fixed-fee structure, the amount charged does not perfectly correspond to the hours expended. I think the appropriate fee award should be calculated as $594,162 multiplied by a fraction to reflect the differences between New York and Delaware rates. The fraction's numerator is the Delaware blended hourly rate[6] and the fraction's denominator is the actual blended hourly rate of the attorneys involved. The Court therefore orders Defendant to calculate the proposed fee award using this formula and meet and confer

[6] By "blended hourly rate," I mean a weighted average hourly rate based on the rates of the attorneys who worked on the case, taking into account the proportion of the work the attorneys did. The numerator should be based on the American Intellectual Property Law Association's Report of the Economic Survey.

with Plaintiff. Within twenty-one days, Defendants are to submit a joint proposed order reflecting an agreed-upon fee award consistent with this Opinion. If the parties cannot agree, they are ordered to file letters of no more than three pages explaining their positions.

**B. Discovery and Injunction**

Defendant further requests discovery regarding Plaintiff's financial condition and an order enjoining Plaintiff from dissipating assets. (D.I. 94 at p. 10). According to Defendant, Plaintiff's counsel represented that Plaintiff had only thirty or forty thousand dollars in assets from which to pay a fee award. (*Id.* p. 14). Defendant argues that Plaintiff received approximately ten million dollars in settlements on its patents, most of which it received after Defendant first raised its fee request. (*Id.* at p. 10). The settlements Defendant identifies were entered into between November 2013 and February 2014. (*Id.* at pp.11-12). Though this was before the Court ordered fees, Defendant notes that the Court had previously indicated that Defendant had a "decent argument" that it was entitled to fees. (*Id.* at p. 13). Defendant also argues that discovery is warranted to determine whether Plaintiff's members are liable for the fee award based on alter ego liability. (*Id.* at pp. 15-18).

Finally, Defendant argues that there is good reason to believe that Plaintiff and its members will dissipate assets and requests an injunction to prevent them from doing so. (*Id.* at p. 18; D.I. 104 at p. 10). Defendant notes that other courts have enjoined Erich Spangenberg, who Defendant alleges was involved with the settlements, from dissipating assets because his "use of his corporate entities is certainly cause for concern." (D.I. 104 at p. 10 (quoting *Taurus IP, LLC v. DaimlerChrysler Corp.*, 559 F. Supp. 2d 947, 961 (W.D. Wis. 2008), *aff'd in part, rev'd in part on other grounds*, 726 F.3d 1306 (Fed. Cir. 2013)).

Plaintiff argues that there is no reasonable basis to believe that it dissipated assets. (D.I. 103 at p. 10). Moreover, even if there were reason to so believe, Plaintiff argues that Defendant's request for discovery is premature. (*Id.* at p. 11). Plaintiff notes that Federal Rule of Civil Procedure 69(a)(2) governs discovery from judgment creditors. Plaintiff argues that ordering discovery before judgment has been entered would render that rule superfluous. (*Id.*). Plaintiff further argues that Defendant's request that the Court enjoin Plaintiff from dissipating assets lacks support and is procedurally improper. (*Id.* at p. 13). Plaintiff maintains that the Court does not have jurisdiction to bind non-parties and Defendant failed to provide evidentiary support for its request. (*Id.*).

The Court finds that Defendant's request for discovery is premature. The Court agrees with Plaintiff that ordering discovery before judgment has been entered would render Rule 69(a)(2) superfluous.

> [D]iscovery may not be requested before the judgment is entered. Prejudgment discovery is prohibited because the purpose of the provision is to allow the judgment creditor to identify assets from which the judgment may be satisfied; however, after judgment, the judgment creditor is permitted to conduct a broad inquiry to uncover any hidden or concealed assets of the judgment debtor.

MOORE'S FEDERAL PRACTICE AND PROCEDURE § 26.102. Accordingly, Defendant may obtain discovery pursuant to Rule 69(a)(2) once judgment has been entered.

The Court further finds that an injunction is not appropriate. The Court "enjoys the power to protect a potential future damages remedy," but the "traditional requirements for obtaining equitable relief must be met." *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 197 (3d Cir. 1990), *holding modified on other grounds by Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994). The moving party must demonstrate (1) a likelihood of success on the merits, (2) the probability of irreparable harm if relief is not granted,

(3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest favors granting an injunction. *Id.* at 197-98.

The first factor has been shown, as the Court already granted Defendant's motion for attorney's fees. (D.I. 92). However, Defendant has not addressed the other three factors. Though Defendant argues that Plaintiff's counsel previously advised that it did not have sufficient assets to satisfy a fee award (D.I. 94 at p. 10), Plaintiff claims that Defendant's arguments "are based entirely on speculation." (D.I. 103 at p. 11). The Third Circuit has "insisted that the risk of irreparable harm must not be speculative." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000). Defendant's request for an injunction was not made by motion or supported by a brief addressing the relevant factors. The Court therefore finds that Defendant has not met its burden of demonstrating that an injunction is warranted.

## CONCLUSION

For the reasons set forth herein, Defendant's request for attorney's fees is **GRANTED IN PART**. Defendant is to calculate a fee award as instructed above and meet and confer with Plaintiff. Defendant is instructed to submit a joint proposed order reflecting an agreed-upon fee award consistent with this Opinion within twenty-one days. If the parties cannot agree to a joint proposed order, they are to file letters of no more than three pages within twenty-one days explaining their positions. Defendant's requests for discovery and an injunction are **DENIED**. An appropriate order will be entered.